(No. 40909.—

THE PEOPLE *ex rel.* The Exchange National Bank of Chicago, Appellant, *vs.* THE CITY OF LAKE FOREST *et al.*, Appellees.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

CHARLES F. MARINO, of Chicago, for appellant.

THOMAS H. COMPERE, Corporation Counsel, of Waukegan, (STANLEY GROSSHANDLER, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

This *mandamus* proceeding was brought by the plaintiff in the circuit court of Lake County to compel the corporate authorities of the city of Lake Forest (City) to accept a plat of a proposed resubdivision. The City refused to approve the plat because it did not provide for certain dedications of land for public streets. The plaintiff and defendants both moved for summary judgments. The trial court entered a summary judgment in favor of the City, and the plaintiff has appealed directly to this court. A constitutional question appears as to whether the City's requiring the dedications will be upheld as reasonable police power regulation or will fail as an attempted confiscation of private property for public use without allowing just compensation.

The plaintiff is the owner of "Serafine Acres" a 26½ acre tract of real estate located in the City. Lot 2 of the present two-lot subdivision is a long 25-acre property, resembling a rectangle, which is improved with a two-story brick residence and swimming pool and which fronts at its east border on Ridge Road, an existing north-south public street. The home and pool are set back from Ridge Road. There is direct access to Ridge Road through a private driveway.

Adjoining the plaintiff's property to the north is "Teich's Subdivision." In August, 1965, the City approved a subdivision of this neighboring property into 6 lots. Lots 5 and 6 of Teich's Subdivision are interior lots located in the west portion of the property. They are unimproved and

landlocked in that they have no access to any existing public thoroughfare. The approved and recorded plat of Teich's Subdivision provides by agreement of the owners that "Lots 5 and 6 will not be buildable until served by a public road and this covenant shall run with the land." In the subdividing of the Teich property, the owners dedicated two strips of land for public street purposes. (The standard width of streets in the City is 66 feet.) One dedication consists of a 66-foot-wide strip of land which runs apparently about 1,000 feet in a north-to-south direction perpendicularly adjacent to and ending at the northern boundary of Serafine Acres. This right of way is bordered on the east by Teich's Subdivision lots 4 and five and on the west by lot 6. The other dedication begins in the east at Ridge Road. It is 33 feet wide and stretches about 2,000 feet in a westerly direction parallel with and contiguous to the northern boundary of Serafine Acres. The way ends where it meets the 66-foot-wide dedication above described along and above the northern boundary of Serafine Acres. Both these dedications remain unimproved, streets not yet having been laid.

In January, 1966, the plaintiff, Joseph Serafine, submitted to the City for approval a tentative plat for resubdividing lot 2 of Serafine Acres into two parcels, proposed lots 1 and 2. Proposed lot 1, where the residence and pool are situated, would be 8½ acres. Proposed lot 2 would be an unimproved 16½ acre dumbbell shaped area which would almost enclose proposed lot 1. Both proposed lots would front on and have direct access to Ridge Road, as before. The plaintiff stated on oral argument, that he had sought resubdivision of this 25-acre property because he believes the prospect of selling the house will be improved if it is situated on an 8½-acre lot (proposed lot 1) rather than on a 25-acre lot. Also, it appears from the record that a contract to sell proposed lot 1 had been entered into, contingent upon the City's approval of the plat of resubdivision.

The City prescribed as a condition precedent to its approval of Serafine's tentative plat of resubdivision that he dedicate designated land as public street sites. The City insists upon two dedications, both of which the plaintiff has declined to make. The first would be a narrow 33-foot wide strip of land. It would commence at Ridge Road in the east and run west along the northern boundary of Serafine Acres about 2,000 feet parallel to and fusing with the identical 33-foot-wide east-west pathway already dedicated in Teich's Subdivision. The two merged 33-foot-wide rights of way would then potentially form a full 66-foot-wide thoroughfare. The second dedication would be a narrow slice of land 66 feet in width and about 355 feet in length in the western portion of Serafine Acres. This dedication would begin about at the southern boundary of proposed lot 2 and cut directly through and across the lot to its northern boundary. At the northern boundary this right of way would unite with and thus extend the 66-foot-wide north-south potential roadway already dedicated in Teich's Subdivision. Too, this potential north-south street would be met by the two fused 33-foot strips described which lead to Ridge Road to the east.

The plaintiff argues that under the circumstances the City's rejection of his plat of resubdivision because it does not contain dedications for new public streets amounts to a taking of private property for public use without just compensation in violation of the 5th and 14th amendments to the United States constitution and section 13 of article II of the constitution of Illinois. The City maintains that the legislature has duly delegated to it the power to regulate the platting and subdividing of land within the City's corporate limits and that this power has been reasonably exercised in this case.

The City specifically relies on section 8 of article XI of its special legislative charter to support its action in requiring the dedications mentioned for approval of the plain-

tiff's plat of resubdivision. That special charter provision states in pertinent part that: "The city council shall have the power to require that all * * * subdivisions of land within the limits of said city shall be laid out or platted as to correspond and conform to the regular blocks, streets, alleys and highways already laid out and established within said city * * *." The City also points for authority to Chapter 8, Article III ("New Subdivisions") of its City Code where it is said, under 8—3—7(j) pertaining to final plat requirements, that: "Provisions shall be made for direct connection with existing streets in adjoining properties or subdivisions."

It is unquestioned that a municipality appropriately authorized can require compliance with reasonable regulatory conditions preliminary to its approval and recording of plats for the subdivision of lands. And a requirement that a subdivider dedicate land for or even improve streets as a condition to the municipality's acceptance can in appropriate circumstances qualify as reasonable regulation. (See *Petterson* v. *City of Naperville,* 9 Ill.2d 233.) But, as will be seen, the underlying question here really is who should bear the economic burden of providing the land to be marked for public use. See *Pioneer Trust and Savings Bank* v. *Village of Mount Prospect,* 22 Ill.2d 375, 380-81.

In *Rosen* v. *Village of Downers Grove,* 19 Ill.2d 448, we stated at p. 453 that the statutory delegation of regulatory power to the village there concerned appeared to be based on the theory that "the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be cast upon the public." But we then cautioned that: "because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The dis-

tinction between permissible and forbidden requirements is suggested in *Ayres* v. *The City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but cannot require him to provide a major throroughfare, the need for which stems from the total activity of the community." 19 Ill.2d at 453.

One year later in *Pioneer Trust and Savings Bank* v. *Village of Mount Prospect,* 22 Ill.2d 375, we considered a *mandamus* action by a plaintiff who was a residential developer and who proposed subdividing certain property and constructing some 250 living units on the land. The defendant village had rejected an offered plat of subdivisions because it failed to provide certain dedications for an elementary school and playground sites. We quoted with approval the standards from the *Rosen* case stated above. This court then used these standards to formulate a test of the reasonableness of municipal action, which is directly applicable here. We declared: "If the requirement is within the statutory [or special charter] grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power." (22 Ill.2d at 380; see also Reps and Smith, Control of Urban Land Subdivision (1963), 14 Syracuse U.L. Rev. 405, 407.) Our court in *Pioneer* then concluded on the record before it that it was unreasonable and unconstitutional for the village to condition its approval of the developer's plat of subdivision on his dedicating land for educational and recreational facilities, the court finding that the need for such facilities was not specifically and uniquely attributable to the addi-

tion of the subdivision, but, rather resulted from the total development of the community.

Here, too, it cannot be said that the need for new public streets is specifically and uniquely attributable to any activity which will arise from the plaintiff's resubdivision of his 25-acre property into 2 lots. Where requirements for dedications or improvements for public use are upheld, the subdivider typically is a residential developer. (See, *e.g., Jordan v. Village of Menomonee Falls,* 28 Wis.2d 608; 137 N.W.2d 442, 445-49; *Brous v. Smith,* 304 N.Y. 164, 106 N.E.2d 503; *Ayers v. The City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1; *Pennyton Homes, Inc. v. Planning Board of Stanhope,* 41 N.J. 578, 197 A.2d 870.) There is no suggestion that the plaintiff is a developer or that he contemplates construction of any kind on his property. Rather, the stated purpose of the application for resubdivision was to reduce the size of the lot on which the residence is located from 25 to 8½ acres so that it can be more readily sold. After the resubdivision both lots concerned will still front on and have direct access to existing Ridge Road, as before. We can perceive no anticipated change in activity which will be attributable to the resubdivision requested, much less an increase in activity of such proportions as to require new servicing streets. Actually, it appears that the only discernible and prospective beneficiary of the dedications demanded here would be the neighboring Teich's Subdivision. As stated, unimproved interior lots 5 and 6 of that subdivision are landlocked without connection to any existing thoroughfare. The owners of that subdivision have agreed that lots 5 and 6 will not be improved until they can be serviced by public roads. The owners have dedicated unimproved land for public street sites, which streets when laid will primarily serve, it appears, Teich's lots 5 and 6. The dedications sought to be impressed on the plaintiff here would link with and exactly tie into the future

street route pattern established by these existing dedications in Teich's Subdivision.

We deem, therefore, that the City's action in refusing to approve the plaintiff's plat of resubdivision because he did not agree to dedicate land for new public roadways exceeded the bounds of permissible and reasonable regulation and would have constituted a taking of private property for public use without compensation. If the City considers that new streets are necessary at the locations sought herein to serve the community at large or an adjacent subdivision, the City can seek to acquire the needed land by other means, such as by purchase or condemnation.

The City raised two other objections in the trial court, which were not considered by it because of its ruling in favor of the City on the dedication issue, which we have here discussed. While the City has made no reference on this appeal to these objections, we deem it would be inappropriate for us to order the issuance of a writ of *mandamus* without the resolution of these questions. Accordingly, we reverse the judgment of the circuit court of Lake County and remand the cause for a determination of these remaining questions, if the City persists in its position that they represent grounds for the denial of *mandamus*.

*Reversed and remanded, with directions.*