BOARD OF EDUCATION OF TOWN-SHIP HIGH SCHOOL DISTRICT NO. 214, COOK COUNTY, ILLINOIS; Board of Education of Consolidated High School District No. 200, Cook County, Illinois; Board of Education of Township High School District No. 207, Cook County, Illinois; Board of Education of Township High School District No. 211, Cook County, Illinois; and Board of Education of Township No. 87, Dupage County, Illinois, individually and as representatives of all persons similarly situated, Plaintiffs,

v.

CLIMATEMP, INC.; Evco Associates, Inc.; Gideon Engineering Corp.; Moto Heating-Ventilating-Air Conditioning Corporation; R. A. Martin Co., Inc.; Reliable Sheet Metal Works, Inc.; Steel City Ventilating & Sheet Metal Co.; Zack Company; Admiral Heating & Ventilating, Inc.; Bellis-Hanley, Inc.; F. E. Moran, Inc.; Abbott & Associates, Inc.; AC Company, Byness, Inc.; Mellish & Murray Co.; The Narowetz Company; Wagner Heating & Ventilating Co.; Anderson & Litwack Co.; Pullman Sheet Metal Works, Inc.; Robert Irsay Co.; Kraus Sheet Metal Works, Inc.; Robert Ahrenhold; Stanley B. Bellis; William Black; Victor Comforte; John Eiselt; Melvin Fakter; Kenneth Gardner; Gideon Goldschmidt; Charles L. Howard; Ronald Litt; Raymond J. Lyons; Owen A. Moran; Richard S. Wise; Eugene Abbott; John J. Coogan; John T. Coogan; Dennis Connor; H. James Murray; Robert Moon; Robert Freiny; James Hardy; Harvey Anderson; James Anderson; Robert Irsay; Donald Lewis; Lester Goldwyn; and Herbert Richards, Defendants.

The STATE OF ILLINOIS; the Chicago Board of Education; and the County of Cook, Plaintiffs,

v.

CLIMATEMP, INC.; Evco Associates, Inc.; Moto Heating-Ventilating-Air Conditioning Corporation; R. A. Martin Co., Inc.; Steel City Ventilating & Sheet Metal Co.; AC Company, Wagner Heating & Ventilating Co.; Robert Irsay Co.; Crone Associates; Hunter Clark Ventilating Co.; Sheet Metal Workers, International Association, Local 73; Robert Ahrenhold; William Black; Victor Comforte; John Eiselt; Kenneth Gardner; Gideon Goldschmidt; Raymond J. Lyons; James Connor; Robert Freiny; John J. Coogan; Leonard Wendt; and Gene Bednarz, Defendants.

Nos. 79 C 3144, 79 C 4898.

United States District Court, N. D. Illinois, E. D.

Aug. 20, 1981.

Franke & Miller, John H. Hager, Wilbert F. Crowley, James Gebhart, Coin, Crowley & Nord, Mary P. Benz, Richard J. Phelan, Michael A. Pope, Phelan, Pope & John, Ltd., Chicago, Ill., for plaintiffs.

Bryson P. Burnham, John D. Donlevy, Mayer, Brown & Platt, Chicago, Ill., for Gideon Engineering Corp.

Robert Sternberg, Maurice Raizes, Elliott Hartstein, Cohon, Raizes & Regal, Chicago, Ill., for Pullman Sheet Metal Works, Inc. and Lester Goldwyn.

Jerome Torshen, William McVisk, Samuel Hassen, Maury Fisher, Fisher, Hassen & Fisher, Chicago, Ill., for Mellish & Murray Co. and H. James Murray.

Michael Sher, Byron Delman, Sheldon Collen, John Simon, Friedman & Koven, Chicago, Ill., for Gideon Goldschmidt.

Robert A. Simon, Chicago, Ill., for Reliable Sheet Metal Works, Inc. and Melvin Fakter.

Sherman Carmell, Carmell & Charone, Chicago, Ill., for Sheet Metal Workers, Intern. Ass'n, Local 73.

Jerold Solovy, Anton Valukas, Robert L. Graham, Thomas E. Lindley, Jenner & Block, Chicago, Ill., for Abbott & Assoc., Inc., Eugene Abbott, Anderson & Litwack Co., and Harvey and James Anderson.

Samuel K. Skinner, Charles W. Douglas, Sidley & Austin, Chicago, Ill., for Robert Irsay Co., Robert Irsay and Donald Lewis.

Michael A. Crane, George N. Gordon Assoc., Chicago, Ill., for Admiral Heating & Ventilating, Inc. and Ronald Litt.

Michael B. Nash, Burke, Nash & Shea, Howard E. Gilbert, Herman, Tannebaum, Levine & Gilbert, Chicago, Ill., for Climatemp, Inc. and Victor Comforte.

Thomas B. Meites, Richard L. Manning, Crowley, Fuller & Manning, Chicago, Ill., for Charles L. Howard and Zack Co.

William K. McVisk, Royal B. Martin, Jr., Silets & Martin, Chicago, Ill., for Kraus Sheet Metal Works, Inc. and Herbert Richards.

Alvin E. Rosenbloom, Chicago, Ill., for R. A. Martin Co., Inc.

Fred W. Mattlin, John E. Noel, John E. Burke, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for F. E. Moran, Inc. and Owan A. Moran.

Gerald G. Saltarelli, Ronald Bulter, Winston & Strawn, Chicago, Ill., for Byness, Inc., Dennis Dams and James Connor.

William J. Martin, Edward B. Hirshfeld, Gordon Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., for the Narowetz Co. and Robert Moon.

Aaron E. Hoffman, Freda J. Levenson, Altheimer & Gray, Chicago, Ill., for Bellis-Hanley, Inc., Stanley B. Bellis and Richard S. Wise.

Thomas M. Genovese, Chief, Lee H. Weiner, Stephen P. Juech, Asst. Attys. Gen., Antitrust Div., Chicago, Ill., for State of Illinois.

## Memorandum

LEIGHTON, District Judge.

The controversy in these consolidated cases arises out of alleged antitrust violations in the sheet metal industry within the Chicago metropolitan area. Plaintiffs in 79 C 3144 are five Chicago area school districts; defendants are sheet metal companies and their executives. A detailed history of this case is reported as 1980–81 Trade Cas. Par. 63,863 (N.D.Ill.1981); therefore, it is sufficient to describe it as a suit alleging bid-rigging and allocations of jobs by sheet metal construction companies. Plaintiffs in 79 C 4898 are the State of Illinois and two of its governmental subdivisions. Defendants are substantially the same as in the other case; the allegations are also of bid-rigging and job allocations in the sheet metal industry. This court has recently ruled that a class will not be certified in 79 C 4898.

Now before the court is a motion by the plaintiffs in 79 C 3144 for class certification, for a finding that they are qualified to represent the class, and that the class be certified to consist of both private and public purchasers of sheet metal construction. Defendants oppose the motion. Briefs have been filed; the court has heard the oral presentations and arguments of the parties. The issue presented is whether this court should certify the class as proposed; and, as to named plaintiffs who are all engaged in the public function of educating children, find that they are qualified to represent both private and public purchasers of sheet metal construction. This issue appears to be one of first impression.

II

In support of their position that they are qualified to represent a class composed of private and public purchasers, the school boards claim that any litigant with standing who meets the requirements of Rule 23, Fed.R.Civ.P. should be permitted to act as class representative. They point to cases in which public entities have been permitted to do so. *E. g., State of Illinois v. Bristol-Myers Company*, 470 F.2d 1276 (D.C.Cir. 1972) (State of Illinois was permitted to represent public and private purchasers of ampicillin and other semisynthetic penicillins in an antitrust action brought by the Attorney General of the state); *State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976) (Ohio public retirement board was allowed to represent public and private sellers of defendant's stock); *In re Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.1975) (City of Philadelphia allowed to represent nationwide class of public entities). According to the school boards, Rule 23 proceedings offer attractive benefits to litigants, including: 1) ability to share legal fees and expenses with other class members; 2) willingness of counsel to proceed on a contingency rather than hourly fee basis; and 3) broader discovery rights. Therefore, plaintiffs claim that they should be entitled to take advantage of these benefits by proceeding as representatives of a class composed of pub-

lic and private purchasers of sheet metal services and supplies.

Defendants in support of their opposition, argue that under Illinois law litigation by school boards must be directly related to the purpose of their existence: the education of children. They argue that plaintiffs have failed to show a relation between their educational purpose and this lawsuit. Defendants point out that the school boards have chosen to ignore the option of participating in the related case 79 C 4898 now pending before this court and consolidated with this suit for pre-trial purposes. That action was brought by the Attorney General of the State of Illinois, the Cook County State's Attorney, and the Corporation Counsel for the City of Chicago, on behalf of public entities allegedly victimized by defendants. Defendants also note that the depositions of school board officials show they are unaware of the potential costs of this litigation. Finally, defendants argue that the school boards do not satisfy the adequacy and typicality requirements of Rule 23, Fed.R.Civ.P., because of the differences in proving the alleged claims of school boards and those of private purchasers. A school board's purpose of educating students, defendants insist, is at odds with representing a class that includes private purchasers in an antitrust action. Defendants also note that no private purchaser has ever come forward to participate in these antitrust actions since return of the criminal indictment against them.

In reply, plaintiffs claim that no meaningful distinction can be drawn between public and private purchasers of sheet metal supplies and services. They claim to be adequate representatives of the proposed class, and argue that neither Illinois statutes nor case law prohibit them from suing on behalf of a class which includes private purchasers. The school boards stress that proceeding as a class will result in greater efficiency and equitable sharing of costs; they cite depositions of school board officials to show that the litigants are well-informed as to all aspects of proceeding in this action.

Finally, this court takes judicial notice of a major difference between bids on public and private works. Federal courts are required to take judicial notice of state law. *Lamar v. Micou*, 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885); *McIndoo v. Burnett*, 494 F.2d 1311, 1313 (8th Cir. 1974). Accordingly, this court takes notice of Ill. Rev.Stat., ch. 122, par. 10–20.21, which mandates that school boards publicly invite secret, sealed bids on major construction such as sheet metal, and let contracts to the lowest responsible bidder. Similarly, this court takes judicial notice of the accepted practice and custom in the construction industry on private works. *M. J. McGough Company v. Jane Lamb Memorial Hospital*, 302 F.Supp. 482, 484 (S.D.Iowa 1969). Private work customarily involves negotiations between a general contractor and subcontractors who are first invited to bid, and who are not ordinarily bound by state statutes.

### III

Preliminarily, it should be said that neither this court's research nor that of the parties has revealed any case in which school boards have been found qualified to proceed as representatives of a plaintiff class composed of public and private purchasers. Although the school boards cite several cases in support of the proposition that public entities may represent private entities, these cases, in several important respects, are distinguishable from the circumstances of the one before the court.

In *State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976), the district court briefly addressed the ability of the trustee of assets held for payment, retirement allowances, and other benefits to teachers in the Ohio public school system to represent a class extending beyond the beneficiaries in a Rule 10b–5 securities action, and stated:

> The question is considered here only from a federal perspective; this court cannot pretend to speak authoritatively on applicable state law governing trusts and trustees. If a state-created trustee were pre-

cluded, as a matter of state law, from representing a class, the restriction would, we may presume, extend to federal proceedings. Today's decision arises from presentations which contain no indication of any such limitation.

*State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. at 571 n. 2. Implicit in that court's ruling was the important recognition that trustees of funds owe a fiduciary duty to maintain investment funds; accordingly, litigation for the purpose of protecting monies and vindicating losses incurred through investments is intimately related to this fiduciary duty. Moreover, it is significant that the court was not presented with any statutory or case law limitation on the trustee's power to represent a class. In contrast, defendants in this case vehemently argue that Illinois state law limits the school boards' ability to act as class representatives on behalf of private purchasers.

In the second case relied on by the school boards, *In re Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.1975), the City of Philadelphia was permitted to represent a nationwide class of public entities in an antitrust action against four defending manufacturers of master key systems. In relying on this case, the school boards fail to recognize that the court also allowed a private company to represent, in the same action, a nationwide class of private parties. The *Master Key* court did not address the ability of the City of Philadelphia to represent private purchasers of master key systems, and it appears that the City did not attempt to argue that it should be allowed to do so. Furthermore, the fact that the litigants were eventually represented, respectively, by a public and private entity serves to support defendants', rather than plaintiffs', position in this case.

Finally, the school boards rely on the following language in *Illinois v. Bristol-Myers Company*, 470 F.2d 1277–78 (D.C.Cir. 1972), where the State of Illinois was permitted to represent a class of state political subdivisions as well as private consumers:

> Once properly in federal court on its own behalf and that of its political subdivisions, the State (of Illinois), *like any other party*, may seek to proceed under Rule 23 as the class representative of drug purchasers similarly situated, including private purchasers like appellants. The certification of the State in the latter capacity depends upon whether it satisfies the requirements of the federal Rule, *irrespective of state law considerations.* (emphasis added)

While on its face, the language emphasized above appears to stand for the proposition that any party may represent any other party, regardless of state law, a careful reading of the case and the authority on which it relies reveals that the emphasized language is misleading. This conclusion is unavoidable for several reasons. First, the Attorney General for the State of Illinois was specifically recognized as possessing "the common-law duty to protect the public and private purse as a matter of general welfare." *Illinois v. Bristol-Myers Company*, 470 F.2d at 1278.

Second, the sole case cited by the court of appeals for the rule that state law is irrelevant is troublesome when read in the context of the case at bar. In *State of Iowa v. Union Asphalt & Roadoils, Inc.*, 281 F.Supp. 391, 402 (S.D.Iowa 1968), *aff'd*, 409 F.2d 1239 (8th Cir. 1969), the district court merely rejected defendants' objections to the rights of the Attorney General for the State of Iowa to represent, through the State of Iowa, a class of public entities within that state, and refused to consider the Attorney General's statutory limitations, without the benefit of supporting authority. This court concludes that *Union Asphalt* does not furnish a sound basis for ignoring state law limitations as to the ability of a school board to represent private purchasers of sheet metal construction, services and supplies. In the interest of justice, and for the purpose of insuring that present and potential litigants' rights are vigorously represented, the better approach is that taken in *State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569, 571 n. 2 (S.D.N.Y.1976), where the court recognized that state law limitations should be a consideration in questions dealing with class action representation.

## IV

Having reached this conclusion, the court now turns to the question whether the law of plaintiffs' state precludes school boards from acting as representatives of private purchasers in an antitrust action.

■ Illinois law establishes that a school board is the creation of the General Assembly. Ill.Rev.Stat., ch. 122, par. 10–1 *et seq.* It is a body politic and corporate created to perform governmental functions in connection with the education of children within its district. *Board of Education v. Chicago Teachers Union,* 26 Ill.App.3d 806, 326 N.E.2d 158, 161 (1st Dist. 1975). Accordingly, statutes conferring powers to a school board must be strictly construed, and should be construed not only as a grant of power but also as a limitation thereof. *Wesclin Education Association v. Board of Education,* 30 Ill.App.3d 67, 331 N.E.2d 335, 340 (5th Dist. 1975).

The laws of Illinois charge school boards with a weighty responsibility—the education of children. *Quality Education for All Children, Inc. v. School Board,* 385 F.Supp. 803, 820 (N.D.Ill.1974); *School District # 88 v. Kooper,* 380 Ill. 68, 43 N.E.2d 542 (1942). In light of the narrow function of school boards under state law, courts have scrutinized litigation by them to determine whether the "nature and extent of the interests . . . involved are worthy of concern to and protection by the school board . . ." *Board of Education v. County of Woodford,* 19 Ill.App.3d 1078, 312 N.E.2d 724, 725–26 (4th Dist. 1974). In concluding that the plaintiff school board had capacity to initiate declaratory judgment proceedings in a zoning dispute, the court in *County of Woodford* declared the standard for testing the authority of a school board to litigate a particular matter:

> The interests that (a) . . . school board seeks to vindicate (must be) . . . direct and substantial and necessarily relate directly to the duties and responsibilities of the Board of Education.

312 N.E.2d at 726.

Clearly, Illinois school boards have the capacity to bring an antitrust action on their own behalf, for Illinois law provides that they may sue and be sued in all courts and places where judicial proceedings are had, Ill.Rev.Stat., ch. 122, par. 10–2, and defendants do not question plaintiffs' right to do so. It is undisputable that, just as school boards may sue for breach of contracts, or damages arising out of construction contracts, they may sue for damages incurred by them arising out of alleged violations of antitrust law. *Board of Education v. Surety Development Corp.,* 24 Ill. App.2d 638, 321 N.E.2d 99, (2d Dist. 1974), *aff'd,* 63 Ill.2d 193, 347 N.E.2d 149 (1975); *County of Woodford, supra; Board of Education v. George S. Walker Plumbing & Heating, Inc.,* 5 Ill.App.3d 418, 282 N.E.2d 268 (4th Dist. 1972). Such actions plainly satisfy the *County of Woodford* standard in that it would be irresponsible to allow wrongful depletion of school boards' financial resources to go unvindicated.

■ However, the school boards have not shown any relation between their educational purpose and this lawsuit on behalf of private purchasers of sheet metal construction. The welfare of private purchasers is far beyond the legitimate, educational concerns of school boards; the interests of large, private corporations, presumably potential members of plaintiffs' proposed class, are not directly, substantially, nor necessarily related to the school boards' primary function of educating children. *County of Woodford, supra.* Because there is no arguable benefit whatsoever to the educational purpose of the school boards to justify expenditure of local school board funds on a lawsuit for the benefit of private entities, and because public policy considerations militate against such expenditures, this court concludes that the school boards are not authorized under Illinois law, to represent a class of public and private purchasers of sheet metal services and supplies in this antitrust action. Accordingly, this court finds that plaintiffs cannot, as a matter of law, adequately represent the class proposed by them.

V

This court has, of course, taken into account several other factors which bear on the ability of the school boards to represent the proposed class. 3B Moore, Fed.Prac., Par. 23.07(1), 23.07(4). Several courts have considered lack of intervention of proposed class members as a factor weighing against the adequacy of proposed representation. *Du Pont v. Perot*, 59 F.R.D. 404, 412 (S.D.N.Y.1973); *Guttmann v. Braemer*, 51 F.R.D. 537, 539 (S.D.N.Y.1970). It is, therefore, significant that since the government concluded its two-year criminal investigation of the defendants in 1977, not one private purchaser of sheet metal construction, corporate or otherwise, has come forward to seek relief on its own behalf.

Second, public and not private bid-rigging was the subject of the government's criminal indictment referred to earlier. Nevertheless, the school boards propose to undertake, solely for the benefit of private entities, the costly burden of constructing a case to prove that defendants also engaged in bid-rigging in the private sector. As noted in the introductory paragraphs of this memorandum, it appears that the manner in which bids on public and private jobs are made are vastly different.

Third, this court is not persuaded by the school boards' argument that they wish to proceed as a class because of the allegedly greater benefits made available through class action litigation. The school boards are free to join the related action of *State of Illinois v. Climatemp*, 79 C 4898, and have chosen not to. It may be inferred that this court's refusal to certify a class of public entities in 79 C 4898 was a factor in the school boards' decision to seek to represent a class of public and private purchasers. *See State of Illinois v. Climatemp*, 1980–81 Trade Cas. Par. 63,863 (N.D.Ill. 1981), where this court held that the numerosity factor of Rule 23, Fed.R.Civ.P. was not satisfied by the public entities.

█ Finally, this court recognizes that it has emphasized the question of adequacy of representation by the school boards because the rights of potential litigants are at stake. In being mindful of the rule that convenience must be balanced against the need to guarantee adequate representation to potential class members, it is important to stress that representation requirements and qualifications are stringently applied in order to safeguard the rights of those who might otherwise be bound by the outcome of this litigation. *Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975); *Albertson's Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459 (10th Cir. 1974).

VI

█ On July 17, 1981, this court announced in open court that it would rule against the school boards in their request to represent a class of public and private purchasers, and that this written opinion would issue shortly thereafter. Accordingly, counsel for the school boards requested that the court certify the decision for appeal pursuant to 28 U.S.C. § 1292(b). After careful review of the law and the parties' submissions concerning certification, this court concludes that certification is warranted. First, this court finds that a controlling question of law is involved. A controlling question of law is one which is "serious to the conduct of the litigation, either practically or legally." *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 755 (3rd Cir. 1974). Practically, this court's ruling seriously affects the manner in which this litigation may proceed in terms of scope of discovery, differences in proving claims of private as opposed to public purchasers, and potential duplication of effort should this ruling be reversed on appeal. Moreover, this ruling raises a question of paramount importance in other putative class actions involving public entities.

Second, a substantial ground exists for difference of opinion as to the question of law decided herein. The issue whether school boards are barred from representing a class of public and private purchasers in an antitrust action for public policy reasons is, apparently, one of first impression; other courts have held that other types of public entities are adequate representatives of similar classes.

Finally, this court finds that immediate appeal of this decision will materially ad-

vance the ultimate termination of this litigation. Appeal to the Seventh Circuit Court of Appeals at this time precludes wasteful and time-consuming duplication of discovery efforts and judicial resources in the event of reversal after trial of this antitrust suit. It is evident that all present and potential litigants' rights are best protected by early review of this decision.

For the reasons stated above, this court finds that the plaintiff school boards may not represent a class of public and private purchasers of sheet metal services and supplies in this antitrust action. In addition, this decision is certified for appeal pursuant to 28 U.S.C. § 1292(b).

So ordered.