(No. 35582.—

HERMAN ROSEN *et al.,* Appellees, *vs.* THE VILLAGE OF DOWNERS GROVE *et al.,* Appellants.

*Opinion filed May 18, 1960.*

ALAN C. HULTMAN, and HOOPER, BOWERS, CALKINS & CARNEY, both of Downers Grove, and KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (VERNON M. WELSH, and FRANK L. WINTER, of counsel,) for appellants.

CARL O. BUE, of Elmhurst, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Du Page County enjoined the enforcement of portions of the "Subdivision Control Ordinance" of the village of Downers Grove, and certified that the public interest required a direct appeal to this court. (Ill. Rev. Stat. 1959, chap. 110, par. 75.) The defendants, who are the village, an elementary school district and a high school district, have appealed. The principal issue concerns the validity of the ordinance, but there are subsidiary issues as well.

The plaintiffs are Herman Rosen and Firestone Realty, Inc., a corporation. Rosen owns two lots in the village of Downers Grove which he proposed to resubdivide into four lots. The plat which he presented to the village plan commission was approved, subject to the condition that he secure a certificate of compliance from the boards of education of the elementary and high school districts in which his property was located. He then requested the village council to approve the plat without requiring a certificate from the boards of education, and when the council refused to do so he instituted this action.

Firestone owns a tract of vacant land which it proposed to subdivide into 52 lots. It presented its plat to the plan commission which approved it tentatively, but refused final approval until the plaintiff first obtained a certificate of

compliance from the boards of education. Such a certificate was issued and the plat of subdivision was approved, after Firestone had executed an agreement which required it to deposit in escrow the sum of $325 for each lot sold. The money was to be held in escrow for two years from November 1, 1955, at which time it was to become the exclusive property of the school districts. But if, during that period, the provisions of the village ordinance "pertaining to the payment of the $325 per lot in new subdivisions" were held invalid by the Illinois Supreme Court, the moneys were to be returned to Firestone. The agreement also provided that neither Firestone nor its agents or attorneys were to attack the validity of the village ordinance and that if they did, such an attack was not to come within the provision for the return of the funds to Firestone.

Article 53 of the Revised Cities and Village Act authorizes municipalities to establish plan commissions with authority to recommend to the corporate authorities the adoption of an official plan. Section 53—2 provides: "To provide for the health, safety, comfort and convenience of the inhabitants of the municipality and contiguous territory, such plan or plans may establish reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment, including reasonable requirements for public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds, and other public grounds." Section 53—3 provides that no plat of subdivision "shall be entitled to record or shall be valid unless the subdivision shown thereon provides for streets, alleys, and public grounds in conformity with the applicable requirements of the official plan." Ill. Rev. Stat. 1957, chap. 24, pars. 53—2, 53—3.

The village of Downers Grove has established a plan commission, and as a part of its official plan has adopted a "Subdivision Control Ordinance," the relevant provisions of which are as follows:

"DEDICATION OF LANDS FOR PUBLIC USE: Every such plat shall, in addition to all streets, and parking areas, dedicate proportionately for public use or public grounds the equivalent of at least one acre of land for each seventy-five (75) building sites, but not less than one acre of land for each seventy-five (75) family living units. Such public lands so dedicated to be in such location as may be approved by the Plan Commission; PROVIDED HOWEVER, That if the land so required under the requirements of this section shall be less than one acre, and if the Plan Commission shall so recommend, the Village Council may waive the dedication of any lands for public purposes other than the requirements for streets.

"EDUCATIONAL FACILITIES: *Every such plat, for the purpose of meeting reasonable requirements for educational facilities, and to facilitate the establishment of school facilities convenient to any such proposed subdivision, shall dedicate for educational purposes, such area as may be deemed necessary by the Plan Commission to facilitate the establishment of school facilities convenient to the proposed subdivision;* PROVIDED FURTHER, that should the Plan Commission deem that the dedication of such land will not of itself meet the reasonable requirements of providing educational facilities for the proposed subdivision, then the Plan Commission may require any additional means for the providing of reasonable facilities as it may deem necessary; PROVIDED, HOWEVER, that if the land so required under the requirements of this section shall not reasonably meet the requirements of educational facilities convenient to the proposed subdivision, and if the Plan Commission shall so recommend, the Village Council may waive the dedication of any lands for educational purposes." (Italics supplied.)

.The decree of the circuit court held invalid all of the provisions of the ordinance set forth above and enjoined the village and its officers from enforcing them. It also enjoined the village and its officers from requiring a cer-

tificate of compliance from the defendant boards of education as a prerequisite to the approval of a subdivision plat, and enjoined all of the defendants from combining or conspiring to compel the payment of $325 per lot, or any amount whatsoever, to the boards of education as a prerequisite to the approval of a subdivision plat.

Several considerations combine to sustain the decree insofar as it dealt with the requirement of a cash payment or of a certificate of compliance from the boards of education. The statutory requirement of plan-commission approval of a plat of subdivision was designed to assist the orderly growth of municipalities. The provisions of the statute with respect to reasonable requirements for public streets, school grounds and the like, appear to be based upon the theory that the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be cast upon the public. It is upon this theory that we sustained the requirement that a subdivider provide curbs and gutters in *Petterson* v. *City of Naperville,* 9 Ill.2d 233.

But because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in *Ayres* v. *The City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community.

The record in this case shows that the boards of education arrived at the sum of $325 per lot by taking into account factors totally unrelated to the proposed subdivision, such as the time lag between the date when homes are occu-

pied and the date when taxes upon the completed homes are collected. Neither the statute nor the ordinance authorized the plan commission to abdicate its authority in favor of the boards of education. And regardless of advantages of flexibility in equalizing financial burdens that might be secured by substituting monetary charges for the dedication of land, or by combining monetary charges with the dedication of land, the plain fact is that the statute does not authorize this technique. In our opinion the circuit court properly enjoined these practices.

The defendants now concede that the unitalicized portion of the "Educational Facilities" provision of the ordinance is not authorized by the statute and is invalid. They argue, however, that the italicized portion of this provision is authorized by the statute and is valid. For several reasons, we disagree. That portion of the ordinance refers to dedications "for educational purposes" while the statute refers to "reasonable requirements for * * * school grounds." In common parlance "educational purposes" is a broader term than "school grounds," and the record shows that the village and the school authorities did not interpret the term in a limited sense, as restricted to school grounds. Moreover, this portion of the ordinance fixes no standards whatever to govern the plan commission in determining the amount of land to be dedicated. We are of the opinion that the entire "Educational Facilities" provision of the ordinance is invalid.

The decree of the circuit court also held invalid the provision of the ordinance requiring the dedication proportionately for public use or public grounds of the equivalent of at least one acre of land for each 75 family units. The defendants argue that this provision does not relate to school grounds. We think, however, that the ordinance must be interpreted in the light of the statute, which uses the term "public grounds" to include school grounds as well as the other public uses which it enumerates. In the

absence of some indication to the contrary, we think that the term should have the same meaning in the ordinance. It seems clear, however, both from the position now taken by the defendants as to the meaning of this provision and, more significantly, from the activities of the village and the boards of education acting under the ordinance, that this provision was not involved in this case. All of the actions of the defendants took place under the "Educational Facilities" provision. It follows that the circuit court erred in declaring the public grounds provision invalid, and restraining its enforcement. We find it unnecessary therefore to pass upon the plaintiffs' contention that while a municipality may, as the *Petterson case* indicates, require the dedication of public streets, it may not require the dedication of land for school grounds.

After Firestone's plat of subdivision had been approved it sold numerous lots. It did not, however, pay the sum of $325 into escrow with respect to these lots until after the boards of education had threatened to record the escrow agreement. Thereupon it made payments, and when the case was tried the total payments made exceeded $7,000. The decree found that Firestone had made these payments, not voluntarily but under compulsion and duress, and directed the boards of education to repay them to Firestone. The defendants urge that the agreement was voluntarily entered into by Firestone and that the payments were voluntarily made. From the record it appears that Firestone first paid by a check which indicated that the payment was made under protest. That check was refused. Its subsequent checks did not indicate upon their face that payment was under protest but a letter was written to the attorney for the boards of education which stated Firestone's understanding that its claim for refund would not be prejudiced by the payments. The record shows that Firestone is engaged in the business of subdividing raw land upon a large scale, and that it is under contractual obligations to furnish

building sites to contractors who are engaged in the construction of buildings. The economic pressure upon such a large scale developer is obvious and we think duress has been established in this case.

This action was prosecuted as a class action by the named plaintiffs on behalf of themselves and other persons similarly situated. The decree of the circuit court restrained the defendant boards of education from disposing of any money paid to them "as a prerequisite or condition to the approval of any subdivision plat or paid under any agreement that was entered into as such prerequisite or condition." It also declared any funds so received by the board of education to be trust funds and ordered that they be held by the boards of education until the further determination of the validity of any written or oral agreements for the payment of money entered into as a prerequisite to the approval of a plat of subdivision. The defendants argue that these portions of the decree are erroneous because the action is not properly a class suit and because these provisions of the decree are vague and burdensome. In our opinion this action was properly sustained as a class suit. The "dominant and pervasive" issues in the case concerned the validity of the ordinance and the legality of the procedures adopted by the defendants. These issues were common to all subdividers who entered into such agreements as prerequisites to the approval of their subdivision plats. It may be, as the defendants urge, that subsequent proceedings will reveal the existence of some subdividers who made payments voluntarily to the boards of education. But the defendants' opportunity to establish the circumstances and to assert their legal defenses will not be impaired by litigating any such subsidiary issues in the present action instead of in separate actions. *Harrison Sheet Steel Co.* v. *Lyons,* 15 Ill.2d 532, 538.

From what has been said it follows that the decree of the circuit court of Du Page County must be affirmed in

part and reversed in part, and that the cause must be remanded for the entry of a decree in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*