EMIL ANDRES et al., Plaintiffs-Appellants, *v.* THE VILLAGE OF FLOSSMOOR et al., Defendants-Appellees.

(No. 58103; ■■■■■■■■■■■■■)

First District (4th Division)—October 24, 1973.

Calvin Sawyier, of Chicago, for appellants.

Thomas J. McGrath, of Homewood, for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, dismissing appellants' petition for (1) an injunction against enforcement of a zoning amendment which rezoned an 8.5 acre tract of land in the Village of Flossmoor and (2) for a declaratory judgment that said ordinance was void on its face for reasons, among others, that such ordinance constituted "contract" zoning, and because it was allegedly not passed by the necessary two-thirds majority of the Board of Trustees of the Village of Flossmoor as required by law.

The trial court ruled against appellants' contentions that said ordinance constituted "contract" zoning or that it was not passed by the required number of votes. In addition, it held that said ordinance was a reasonable exercise of the legislative zoning power and that appellants failed to disprove the presumptive validity of that legislative action.

The issues on appeal are:

(1) Whether the ordinance which contains an express provision requiring the execution of a contract between the village and property owner is valid;

(2) Whether the ordinance which contains special limitations not imposed on other land is valid;

(3) Whether the failure to comply with the written express requirements of the ordinance renders it null and void, and

(4) Whether the ordinance was properly passed by the village.

Ordinance No. 500 became effective on July 15, 1971, and this suit was filed July 19, 1971, by two owners of property adjoining the rezoned tract (known as the "Markey Estates" subdivision) on behalf of themselves and all other property owners similarly situated or who, although not immediately abutting the Markey Estates tract, will nevertheless suffer special damage as a result of the rezoning. This entire section was, until the passage of Ordinance No. 500, zoned R-2, single-family residential, and the Markey Estates had been subdivided for single-family residence development.

The owner-developer filed a petition which asked "to have said property rezoned for two-family one-story ranch dwellings for residential purposes containing 36 units." It was this petition which resulted in the passage of Ordinance No. 500 rezoning the particular parcel of property involved to R-6, but containing some eight restrictions and conditions on the property in addition to restricting its use to only one of the uses permitted in the regulations governing R-6 districts.

Section One of Ordinance No. 500 gives the full legal description of the particular property involved, "presently zoned R-2," and states that it is "hereby rezoned to an R-6 Multiple-Family Residential District, subject to Article IX, Section 7, of the Amended Zoning Ordinance of the Village of Flossmoor, and to all of the restrictions and conditions hereinafter set forth in this Ordinance."

Article IX, Section 7 of the Comprehensive Amendment of the Zoning Ordinance of the Village of Flossmoor, which defines the "R-6 Multiple-Family Residential District" and specifically permits two-family dwellings, duplex dwellings, three-family dwellings, multiple-family dwellings and apartment houses, was in no way amended, supplemented or repealed by Ordinance No. 500.

Section Two of Ordinance No. 500 is entitled "Restrictions and Conditions" and expressly lists, in subsections (a) through (e) and (g) through (j), the following nine conditions imposed on the particular property described in Ordinance No. 500 but not imposed by the regulations of the R-6 multiple-family residential district or other R-6 zoned property:

(a) None of the uses permitted in the R-6 multiple-family residential district (Section 7 of Article IX of the Comprehensive Zoning Ordinance of Flossmoor), to which the property is rezoned, except the one use of "a single-story attached two-family dwelling," is permitted.

(b) These units must be constructed according to the building designs and representations made in the owner-developer's promotional brochure, which brochure was expressly attached to and made part of the ordinance itself.

(c) Fencing, screening and general landscaping is subject to future approval by the village.

(d) The placing of the buildings is to be as shown on the site plan prepared by the owner-developer, which site plan was expressly attached to and made a part of the ordinance itself.

(e) Construction of the proposed buildings must commence within 90 days after the effective date of the ordinance.

(f) All construction shall be in accordance with the building code,

plumbing code, fire preservation code and electrical code, as amended, of the Village of Flossmoor.

(g) The owner-developer must "make a contribution of One Thousand Dollars ($1,000) per building, or a total of Eighteen Thousand Dollars ($18,000), to the Village of Flossmoor to be applied for general Village purposes  *  *  *."

(h) The units can be sold only if both units in each two-family building are sold together and not separately.

(i) The owner-developer must pay all fees and costs incurred by the village in connection with the ordinance.

(j) The owner-developer must "enter into a *contract* within 90 days of the effective date of the Ordinance *with the Village of Flossmoor*  *  *  * containing all the restrictions and conditions of this Ordinance, which Contract shall be recorded and the provisions thereof deemed covenants running with the described property, and *which by its terms prohibit a more extensive use of the property* and shall make the zoning granted hereunder contingent upon strict compliance with said covenants." (Emphasis supplied.)

Section Three of Ordinance No. 500 provides that any violation of the conditions of the ordinance shall constitute an automatic revocation of the zoning granted, and Ordinance No. 500 thereupon becomes "null and void" and the property reverts to an R-2 single-family residential district.

The applicable law of Illinois, which requires reversal of the judgment below upholding Ordinance No. 500, is stated in *Treadway v. City of Rockford* (1962), 24 Ill.2d 488, 496-97, 182 N.E.2d 219.

Mr. Chief Justice Hershey delivered the opinion of the court and covered both the contract zoning and conditional zoning aspects of the broad legal problem raised by amendments to comprehensive zoning ordinances which establish nonuniform, *ad hoc* limitations on particular property not imposed on other property within the same general zoning classification:

On page 496 of the opinion the court said:

"The ordinance in question is not, however, an unconditional amendment rezoning the property from a residential to a local business classification. It is conditional upon the owner's entering into a covenant setting forth in some detail the nature of the improvements to be erected on the property. Such conditional amendments have not fared well in the courts of other jurisdictions, and have frequently been invalidated either because they introduce an element of contract which has no place in the legis-

lative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning."

In its second decision in *Treadway v. City of Rockford* (1963), 28 Ill.2d 370, 371, 192 N.E.2d 351, the court, speaking through Mr. Justice Underwood said:

"We considered an ordinance of the city of Rockford, rezoning this same property, which contained conditional limitations, and a judgment of the circuit court of Winnebago County, which included in its order a number of conditions and restrictions not included in the ordinance. We reversed the judgment and demanded the cause for the reasons stated in the opinion. (*Treadway v. City of Rockford*, 24 Ill.2d 488, decided in March, 1962.) The rezoning ordinance involved in this appeal was passed by the city council of the city of Rockford on June 26, 1962, and reclassified the subject property from "A" residential to local business zoning, without the conditional limitations which were the basis for our prior remandment."

■■ The statement in the *Treadway* case constitutes a succinct and perceptive analysis of the reasons why, absent general statutory authorization and standards, the making of individualized zoning deals by local municipalities, apart from the provisions they are willing to adopt as general zoning regulations, is an invalid abuse of the zoning power. See also *Allred v. City of Raleigh* (1971), 277 N.C. 530, 545-546, 178 S.E.2d 432, 440-441; *Oury v. Greany* (1970), 107 R.I. 427, 431, 267 A.2d 700, 702; *Baylis v. City of Baltimore* (1959), 219 Md. 164, 168, 148 A.2d 429, 433; *City of Knoxville v. Ambrister* (1953), 196 Tenn. 1, 7, 263 S.W.2d 528, 531; *Lewis v. City of Jackson* (Miss. 1966), 184 So.2d 384, 388.

In *Hedrich v. Village of Niles* (1969), 112 Ill.App.2d 68, 77, 250 N.E. 2d 791, this appellate court adverted to the usual criteria of zoning validity—that a zoning ordinance is valid if not arbitrary or unreasonable and bears a reasonable relation to the public health, safety and welfare—and found that the rezoning amendment there met these tests, but went on to hold that:

"This long-established rule must, however, be balanced against a more recent one: that zoning ordinances should not be subject to bargaining or contract."

The court referred to the *Treadway* case and the holdings in other jurisdictions. Both the lower court and the appellate court found the amended ordinance to be reasonable in the light of existing uses in the area, so that the only effect of the consideration on the remand would be to result in the invalidity of the rezoning as contract or conditional

zoning, irrespective of its reasonableness otherwise by customary zoning criteria. The court then said at page 78:

> "In accepting these donations and entering into or approving these agreements the trustees of the Village undoubtedly did what they believed was best for the whole community, but it placed them in the questionable position of bartering their legislative discretion for emoluments that had no bearing on the merits of the requested amendment."

The basic policy at issue here was convincingly stated by the Supreme Court of Florida in *Hartnett v. Austin* (Fla. 1956), 93 So.2d 86, 89 (decided *in banc*):

> "In exercising its zoning powers the municipality must deal with well-defined classes of uses. If each parcel of property were zoned on the basis of variables that could enter into private contracts then the whole scheme and objective of community planning and zoning would collapse. * * * The zoning classification of each parcel would then be bottomed on individual agreements and private arrangements that would totally destroy uniformity. Both the benefits of and reasons for a well-ordered comprehensive zoning scheme would be eliminated.
>
> * * *
>
> The adoption of an ordinance is the exercise of municipal legislative power. In the exercise of this governmental function a city cannot legislate by contract. If it could, then each citizen would be governed by an individual rule based upon the best deal he could make with the governing body. Such is certainly not consonant with our notion of government by rule of law that affects alike all similarly conditioned."

The rezoning ordinance in the *Hartnett* case was very similar to that in the case at bar.

In *Baylis v. City of Baltimore* (1959), 219 Md. 164, 167, 148 A.2d 429, 432, it was held that the power to impose reasonable conditions on the granting of variances, pursuant to express statutory procedures and authority covering such cases of peculiar hardship, is quite different from a rezoning amendment "involving a revision of the comprehensive plan and a change in the district or zone by the legislative body" and that special conditions imposed on rezoning amendments are invalid. After citing cases which reached the same conclusions, the Maryland court went on to say:

> "There seems to be three chief reasons for the rule stated in these cases; that rezoning based on offers or agreements with the owners disrupts the basic plan and thus is subversive of the public

policy reflected in the overall legislation, that the resulting 'contract' is nugatory because a municipality is not able to make agreements which inhibit its police powers, and that restrictions in a particular zone should not be left to extrinsic evidence."

The particular kind of rezoning ordinance, such as Flossmoor Ordinance No. 500, subsection 2(j), which conditions its effectiveness on the subsequent execution by the village and the owner of a *contract* containing all the *ad hoc* limitations and requirements of the ordinance, also exhibits another inherent defect which invalidates such an ordinance, without more, as was precisely pointed out in *Hartnett v. Austin* (Fla. 1956), 93 So.2d 86, 88. There the ordinance also provided that:

"[A]ll of the re-zoning is subject to and dependent upon the full and complete observance of the limitations, restrictions and other requirements imposed as herein set forth."

In the case of *Cederberg v. City of Rockford* (1972), 8 Ill.App.3d 984, 986-87, 291 N.E.2d 249, 251-2, the court said:

"The briefs of both parties cite three cases as authority for the conclusion that the restrictive covenant is void: *Houston Petroleum Co. v. Automotive Prod. C. Assn.*, 9 N.J. 122, 87 A.2d 319 (1952); *Hartnett v. Austin*, 93 So.2d 86 (S.Ct. Fla. 1956); *Baylis v. City of Baltimore*, 148 A.2d 429 (Ct. of App.Md. 1959). Each of these cases condemns the practice of regulating zoning through agreements or contracts between the zoning authorities and property owners. While no single basis for the rule against such zoning practices emerges from the cases cited, among the court's reasons are that by entering into agreement with the property owner, the zoning authority might use the zoning power to further private interests in violation of public policy; that such rezoning is a deviation from a basic zoning plan resulting in nonuniform application of the zoning law and inconsistencies within a zoning classification; that when the actual zoning requirements in force are determined by reference to evidence extrinsic to the zoning ordinances, the zoning law is rendered vague.

We agree with the trial judge and the parties to this appeal that the restrictive covenant in question was an invalid attempt by the City to control the use of the land. Evidence is clear that there was an agreement between the City Council and the prior landowner, by which the local business zoning classification would be granted if a restrictive covenant was executed, limiting the business uses permitted on the land. The cases cited support the conclusion that, under these circumstances, the restrictive covenant is void. In addition, although the exact problem presented

by this case seems never to have been decided in Illinois, a somewhat similar case has established the rule that zoning ordinances should not be subject to bargaining or contract. *Hedrich v. Village of Niles* (1969), 112 Ill.App.2d 68, 77."

In *Shibata v. City of Naperville* (1971), 1 Ill.App.3d 402, 405, 273 N.E.2d 690, the court considered the question of "contract zoning," indicating disapproval of such ordinances.

The *ad hoc,* individualized limitations and requirements upon which the granting of "rezoning" to R-6 of the particular property described in Flossmoor Ordinance No. 500 is conditional are: (1) Only one kind of R-6 use is permitted in this purported R-6 district. (2) The buildings must be constructed in accordance with the representations in the developer's promotional brochure, which is expressly made part of the ordinance. This brochure, by its very nature, is tailored to, *and only to* the particular Markey Estates development and cannot possibly be used to set forth general requirements for the development of all R-6 zoned property in Flossmoor. (3) The fencing, screening and general landscaping must first be approved by the Village Plan Commission and the Board of Trustees. Here there are not only no general standards to guide the development of all R-6 zoned property in Flossmoor, but there are not even any standards applicable to the particular rezoning property. (4) The "contribution" of $1,000 to be made for each of 18 buildings, does not purport to be based on any factors having any conceivable lawful relationship to the zoning requirements of all R-6 zoned property in Flossmoor. (5) The owner is required to begin construction within 90 days and is restricted in his right to sell the structures built on the property. Again, these are not and cannot purport to be based on any conceivable lawful zoning powers of the village in enacting requirements for all R-6 zoned property in Flossmoor.

■■ To provide in a zoning ordinance that the requirements for "general landscaping" will be subject to future approval by the village authorities, without any standard as to what that approval must be based on is an unlawfully vague provision. *City of Watseka v. Blatt* (1943), 320 Ill.App. 191, 50 N.E.2d 589; *Rosen v. Downers Grove* (1960), 19 Ill.2d 448, 453, 167 N.E.2d 230; *Cicero Lumber Co. v. Cicero* (1898), 176 Ill. 9, 5 N.E. 633; *City of Chicago v. Trotter* (1891), 136 Ill. 430, 26 N.E. 359; *Welton v. Hamilton* (1931), 344 Ill. 82, 176 N.E. 333.

To require the payment of a lump sum of money without any basis set forth or discernible for arriving at that sum is unlawful even in respect to municipal powers over subdivision. (*Rosen v. Downers Grove* (1960), 19 Ill.2d 448, 453-54, 167 N.E.2d 230.) It is completely beyond the municipal zoning authority.

■■ Furthermore, the provision in Section Three of Ordinance No. 500 that if the conditions imposed on this particular piece of property are not met, "the property shall revert to an R-2 Single-Family Residential District" is a patently unlawful use of the zoning power which ordains a change in zoning without any of the procedural steps or substantive considerations necessary thereto. *Lewis v. City of Jackson* (Miss. 1966), 184 So.2d 384, 388.

Flossmoor Ordinance No. 500 is the very model of invalid conditional zoning, falling squarely within the general policy considerations which strongly support the *Treadway* rule invalidating such *ad hoc* conditional rezoning amendments.

■■ Because of "contract zoning" with special *ad hoc* restrictions and conditions, we hold that Ordinance No. 500 of the Village of Flossmoor is null and void *ab initio*. Inasmuch as the ordinance is invalid, it is not necessary to consider the questions as to whether it was properly passed by the village board or whether there has been compliance by the property owners.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

ADESKO and DIERINGER, JJ., concur.