338 So.2d 863 (1976)
WALD CORPORATION, Appellant,
v.
METROPOLITAN DADE COUNTY, Appellee.
No. 75-1692.
District Court of Appeal of Florida, Third District.
October 12, 1976.
Rehearing Denied November 8, 1976.
*864 Korner & Sampson, Coral Gables, for appellant.
Stuart Simon, County Atty. and Robert A. Ginsburg, Asst. County Atty., Miami, for appellee.
Before PEARSON, HENDRY and NATHAN, JJ.
NATHAN, Judge.
The appellant in this case, Wald Corporation, is challenging a required dedication of canal rights-of-way and maintenance easements which was imposed by the appellee, Metropolitan Dade County, as a condition of approval of appellant's plat for a proposed subdivision. Wald refused to dedicate, and instead filed a complaint in Dade County Circuit Court, seeking a declaration of the unconstitutionality of those sections of the Code of Metropolitan Dade County which required dedication of land for canal purposes as a condition for plat approval.[1]
*865 The trial court granted the County's motion for summary judgment, holding that the subdivision requirements relating to drainage would be upheld as a matter of law under either of the two prevailing standards of review. While we essentially agree with the decision of the trial court, we feel that it is advisable for us to review the applicable law in the area of subdivision dedication requirements.
There are two distinct standards which have generally been applied by the various state courts when confronted with mandatory dedication. The first was initially proposed by the California Supreme Court in the leading case of Ayres v. City Council, 34 Cal.2d 31, 207 P.2d 1 (1949). In that case, the city planning commission conditioned approval of a proposed subdivision plat upon the dedication of an eighty feet wide strip of land which was to be used for the extension of a nearby cross street. Despite the fact that the existing street was only sixty feet wide, the Ayres court upheld the dedication requirement, noting that the facts of the case sufficiently supported the conclusion "that the required width is reasonably related to the potential traffic needs." Id. at 39, 207 P.2d at 6. (Emphasis added.)
This "reasonable relation" requirement has been applied in a number of other jurisdictions. See, e.g., Brous v. Smith, 304 N.Y. 164, 106 N.E.2d 503 (1952); Krieger v. Planning Com'n, 224 Md. 320, 167 A.2d 885 (1961). Unfortunately, however, the language of Ayres often seems to be cited in cases with markedly different fact patterns, to the extent that the original test pronounced in Ayres may be rendered virtually unrecognizable.
The confusion surrounding application of the Ayres test may be evidenced through reference to several cases which were decided by the Illinois Supreme Court. In the first, Rosen v. Village of Downers Grove, 19 Ill.2d 448, 167 N.E.2d 230 (1960), the high court of Illinois held that a municipality lacked statutory authority to exact cash payments in lieu of dedicating land for educational purposes. Although compulsory dedication itself was not in issue, the Ayres opinion was cited:
"The provisions of the statute ... appear to be based upon the theory that the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be case upon the public. It is upon this theory that we sustain the requirement that a subdivider provide curbs and gutters in Peterson v. City of Naperville, 9 Ill.2d 233, 137 N.E.2d 371.
* * * * * *
"The distinction between permissible and forbidden requirements is suggested in Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, *866 the need for which stems from the total activity of the community." Rosen, 167 N.E.2d at 233-34. (Emphasis added.)
As noted above, the Ayres court had upheld a dedication requirement which was "reasonably related" to the needs of the municipality, yet it was suggested in Rosen that such requirements had to be "specifically and uniquely attributable" to the activity of the subdivider.
In a subsequent decision, Pioneer Trust & Savings Bank v. Villiage of Mount Prospect, 22 Ill.2d 375, 176 N.E.2d 799 (1961), the Illinois Supreme Court was directly confronted with an issue of mandatory dedication. Although the court noted that Rosen had not decided the dedication question, it quoted the "specifically and uniquely attributable" language of the Rosen case to distinguish between permissible and forbidden requirements. Like the earlier Rosen case, Pioneer Trust also cited Ayres as support for this standard of review. But while Ayres ruled that mandatory dedication requirements would be upheld where "reasonably related" to municipal needs, Pioneer Trust ruled that such requirements would be invalid unless "specifically and uniquely attributable" to the subdividers activity.
Although the Pioneer Trust decision cited Ayres as precedent, it would seem that the two cases proposed entirely different standards for the review of subdivision dedication requirements. The Ayres standard of "reasonable relation" puts a heavy burden on the developer to show that the required dedication bears no relation to the general health, safety and welfare. In this regard, it is couched in traditional police power language:
"It is the [developer] who is seeking to acquire the advantages of lot subdivision and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public." Ayres, 34 Cal.2d at 42, 207 P.2d at 7.
Thus, the Ayres standard of "reasonableness" defers to the legislative judgment that there is or will be a threat posed to the welfare of both lot owners and the general public if the required dedication is not made.
Pioneer Trust, on the other hand, shifts the burden of proving the validity of subdivision exactions to the municipality; mandatory dedication is only to be upheld where the discerned needs are directly and solely attributable to the proposed subdivision. The presumptions of validity which are usually attendant police power measures are undermined, if not ignored altogether, thus affording little deference to the judgment of the local legislative authority.
Both of these standards have their relative strengths and weaknesses. The Ayres standard allows the municipality considerable flexibility in the formulation of comprehensive plans for future growth and development. It assures the local legislature that its dedication requirements will be upheld short of gross abuse. But while such wide latitude is routinely accorded in other areas of police power regulation, required dedication as a condition for approval for subdivision plats stands in derogation of constitutionally protected property rights. Thus, it is imperative that some sort of standard be imposed which will not allow virtually unbridled interference with private property. While we believe that a legislative authority may require dedication of land as a condition for subdivision plat approval, the constitutional validity of such requirements should not be tested merely for reasonableness. Such a method of review would allow local governments almost unlimited discretion in the imposition of dedication requirements. For this reason, we cannot accept the Ayres rule of "reasonable relation."
At the same time, the Pioneer Trust case created a standard which is unduly restrictive of local exercises of the police power. While it is possible to envision instances where potential problems will be "specifically and uniquely attributable" to the proposed *867 subdivision, more often than not, local authorities are faced with situations which involve an entire community, including land owned by the complaining subdivider. The cause and effect approach advocated by Pioneer Trust disallows a formidable method of subdivision control, which is an integral part of comprehensive planning. And while it is important to guard against unbridled municipal discretion, it is equally important that those who propose to subdivide may be subjected to rational dedication requirements. For this reason, we also reject the "specifically and uniquely attributable" rule of Pioneer Trust.
In seeking to establish a moderate standard with which to review the actions of Dade County in the instant case, we have sought guidance from the Florida courts. One circuit court has adopted the "strictly and uniquely attributable" standard of Pioneer Trust. Carlann Shores, Inc. v. City of Gulf Breeze, 26 Fla. Supp. 94 (Fla. Santa Rosa Cty.Ct. 1966). As noted above, however, we choose not to adopt such a restrictive standard. The Fourth District Court of Appeal invalidated a mandatory dedication requirement in Admiral Development Corp. v. City of Maitland, 267 So.2d 860 (Fla. 4th DCA 1975), but because the municipality had exceeded its charter authority. While the Maitland case did cite a Rhode Island decision which utilized the "specific and unique" language of Pioneer Trust, both of these cases are distinguishable to the extent that they were concerned with dedication requirements which were set at a fixed percentage by law. Such fixed percentage requirements were found to be arbitrary on their face.
Although no Florida appellate cases can be found on the point concerned herein, the Supreme Court of Florida has had occasion to limit exercises of the police power where private property rights were adversely affected without adequate justification. In a case concerning the regulation of outdoor advertising, the court held that private business could not be subjected to police power restrictions where there was "no reasonably identifiable rational relationship between the demands of the public welfare and the restraint upon private business... ." Eskind v. City of Vero Beach, 159 So.2d 209, 212 (Fla. 1963).
Although Eskind involved a business regulation, its standard of review may be readily appropriated for use in determining the validity of the subdivision exaction which is currently before us. The situations involved in the two cases are analogous. As was noted in a widely cited commentary on subdivision control requirements:
The subdivider is a manufacturer, processer, and marketer of a product; land is but one of his raw materials. In subdivision control disputes, the developer is not defending hearth and home against the king's intrusion, but simply attempting to maximize his profits from the sale of a finished product. As applied to him, subdivision control exactions are actually business regulations.
John D. Johnston, Jr., Constitutionality of Subdivision Control Exactions: The Quest for a Rationale, 52 Cornell L.Q. 871, 923 (1967). While this statement displays the correlation between subdivision control and business regulation, it is also supportive of a critical distinction which must be drawn between the ordinary property owner and the subdivider.
Unlike one who merely reserves his property for personal use or sale as a single tract, the subdivider profits from the sale of lots within the subdivision to prospective home builders. The local government, in turn, must consider the welfare of the families who will be filling the development. It is eminently reasonable, therefore, to allow the municipality to impose certain conditions upon the developer so that it may provide for the needs of persons who would not otherwise have been a local concern. And in a very real sense, the subdivider profits from the conditions imposed upon him, since the provision of safety and health requirements benefits potential buyers, thus rendering the lots of the subdivision more attractive.
*868 This same reasoning was utilized by the Supreme Court of Wisconsin to uphold a required dedication of land for school, park and recreational purposes. Jordan v. Village of Menomonee Falls, 28 Wis.2d 608, 619-20, 137 N.W.2d 442, 448 (1966). Using a police power rationale, the Wisconsin court found that there was a reasonable connection between the required dedication and the anticipated needs of the community. The court noted that it might be impossible to show at times that the required exaction would be necessary to meet a need which was solely attributable to one particular subdivision. Nevertheless, the local authorities might well be able to prove that continued approval of subdivisions over the years could result in dramatic increases in the amount of services and safeguards which the municipality would have to provide. Such proof would certainly justify the dedicatory requirement.
This "rational nexus" approach provides a more feasible basis for testing subdivision dedication requirements than the two methods of review discussed earlier. It allows the local authorities to implement futureoriented comprehensive planning without according undue deference to legislative judgments. It requires a balancing of the prospective needs of the community and the property rights of the developer. But above all, it treats the business of subdividing as a profit-making enterprise, thus drawing proper distinctions between the individual property-holder and the subdivider. While the former may not ordinarily have his property appropriated without an eminent domain proceeding, the latter may be required to dedicate land where the requirement is a part of a valid regulatory scheme.
The record in the instant action clearly demonstrates the need for proper drainage through the proposed subdivision. The Wald property is located in a "glade area" of Dade County which has been subject to periodic flooding. Although the subdivision parcel itself is slightly above flood level, other parts of the glade both upstream and downstream from the parcel are lower, and are thus subject to runoff from the Wald subdivision. In 1957, the Board of County Commissioners for Dade County adopted a plan for a secondary canal system which was intended to run through the Wald Property. This plan was tentative, according to an affidavit by F.D.R. Parks, the Water Control Engineer for the Dade County Public Works Department; it is revised and realigned as different tracts are developed. The latest revision to the water control plan was approved in 1972. Parks' affidavit notes that both upstream and downstream property will be adversely affected if flow-through drainage is not provided across the Wald subdivision. A further critical point is that the subdivision itself would be damaged by periodic flooding without flow-through drainage. These points are not refuted. To the contrary, Wald concedes that it will be benefited once the canal system is connected.
Although appellant belabors the fact that the canal system is not yet fully operable, this point is without merit, since it would otherwise be impossible to institute reasonable regulation and dedication requirements as part of comprehensive municipal planning. Whole areas of a community are often zoned before any actual development occurs. In fact, Florida Statutes §§ 163.160 and 163.195 specifically authorize the adoption of comprehensive plans for future development. Where such plans are adopted, zoning changes may not be implemented where the proposed change will not conform to the comprehensive plan, unless there is approval by the local governmental commission. It would seem illogical to foster intelligent prospective planning in the area of zoning, only to deny this same type of function in the area of subdivision control.
For these reasons, we find that Sections 28-13(a), (b) and (c) of the Code of Metropolitan Dade County are rationally connected to the goals which the County seeks to achieve. The rational nexus between intelligent planning which is designed to protect the health, safety and welfare of the citizens of Dade County and the disputed dedication *869 requirement is sufficient to uphold the subject ordinances as a valid exercise of the police power.
Wald finally contends that Section 28-13 is unconstitutionally vague in that it allows for unlimited and unsupervised discretion in the determination of required dedications. We feel that this claim is unfounded. Chapter 28 of the County Code is replete with regulations and considerations concerning subdivisions and dedication. It contains more than adequate standards to be applied by the Department of Public Works so far as platting and subdivision requirements are concerned. While the Department is allowed some reasonable, warranted discretion, it is properly limited by Chapter 28 when read in conjunction with the County's Manual of Public Works Construction, Water Control Section, and the County Water Control Master Plan. Finally, the actions of the Dade County Plat Commission are reviewable by the Zoning Appeals Board, which affirmed the Plat Committee's denial of approval for the Wald subdivision plat. We therefore find that Wald's claim of unbridled discretion is without merit. See Thomas v. City of West Palm Beach, 299 So.2d 11 (Fla. 1974).
We hold that Sections 28-13(a), (b) and (c) of the Code of Metropolitan Dade County are constitutionally valid, both upon their face and as applied to the Wald subdivision. The trial court's order granting Dade County's motion for summary judgment is therefore affirmed.
Affirmed.
NOTES
[1] Specifically, appellant seeks to have §§ 28-13(a), (b) and (c) of the Code of Metropolitan Dade County declared unconstitutional as a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Article X, § 6(a) of the Florida Constitution. The challenged provisions read as follows:

Sec. 23-13. Drainage
(a) Master plan and manual of public works construction. The developer shall plan all drainage for his subdivision in accordance with the master plan entitled, "County Water Control Plan", recorded in plat book 64, page 114 and in accordance with the flood criteria map, recorded in plat book 53, pages 68, 69, and 70, or as such plan or map may be changed or modified. The drainage plans shall be subject to approval of the public works department for compliance with such plan.
(b) Permit to construct or alter drainage ways. No individual, partnership, or corporation shall construct, deepen, widen, fill, reroute, or alter any existing drainage way, ditch, drain, or canal without first obtaining a written permit from the department of public works. Plans for all such work shall comply with the manual of public works construction of the public works department, and all such work shall be done under the supervision and subject to the approval of the department of public works. Rights-of-way for all such drainage works and maintenance thereof as prescribed by the manual of public works construction and the county water control plan, must be dedicated to the use of the public, such dedication to be made prior to any such construction or alteration if so required by the public works department.
(c) Rights-of-way and easements. Whenever any drainage way, stream, or surface drainage course is located or planned in any area that is being subdivided, the subdivider shall dedicate such stream or drainage course and an adequate right-of-way necessary for maintenance, future expansion and other purposes along each side of such stream or drainage course as is determined by uniform standards prescribed by the manual of public works construction.