DAVID E. THOMPSON *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF NEWARK, Defendant-Appellee.

Second District   No. 2—01—0542

Opinion filed May 3, 2002.

Daniel J. Kramer, of Law Offices of Daniel J. Kramer, of Yorkville, for appellants.

Mathias W. Delort, Heidi A. Katz, and Kenneth M. Florey, all of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, David and Marcita Thompson, appeal the circuit court's order granting summary judgment for defendant, the Village of Newark, in their suit for declaratory relief. Plaintiffs had sought a ruling that defendant's ordinance assessing developmental impact fees for school construction was not authorized by statute and was unconstitu-

tional. On appeal, plaintiffs contend that the court erred in holding that the village's ordinance is valid. They contend that the ordinance is not authorized by a section of the Illinois Municipal Code authorizing the village plan commission to provide for "school grounds" (65 ILCS 5/11—12—5 (West 2000)) or any other provision. They also contend that the ordinance is not supported by a specific grant of authority in the Illinois Constitution and also violates the equal protection clauses of the state and federal constitutions.

The facts are simple and not disputed. The Village of Newark is a small, non-home-rule municipality in a rapidly developing area of Kendall County. In 1995, the village passed Ordinance No. 1995—12—1, authorizing the village to impose school impact fees on new development within the village. Newark Ordinance No. 1995—12—1 (1995). The ordinance imposes both a land acquisition fee and a school district capital improvement development impact fee and includes formulae for calculating each fee for each new development. Newark Ordinance No. 1995—12—1, §§ 00.04.010, 00.04.020 (1995).

Plaintiffs own a lot in the village. In 1988 they attempted to obtain a permit to build a single-family home on their property but were told that they could not receive a permit until they paid the impact fees required by the ordinance. In order to proceed with the construction, plaintiffs paid the fees under protest and wrote the village two checks totaling $3,924.54.

When the village refused plaintiffs' demand to return the money, they instituted this action. Their five-count, first amended complaint alleges that the impact fee ordinance is authorized by neither the Illinois Constitution nor a state statute (count I), that it violates the equal protection clauses of the federal and state constitutions (counts II and III), and that it results in an uncompensated taking of property in violation of the federal and state constitutions (counts IV and V).

Both parties moved for summary judgment. After considering the parties' stipulation of facts and some additional materials, the court granted the village's motion and denied plaintiffs' motion. Plaintiffs timely appeal.

Plaintiffs first contend that the court erred in holding that the village's ordinance is statutorily authorized. They maintain that, as a non-home-rule municipality, the village can exercise only the powers the constitution or an enabling statute specifically grants it and that no such provision allows the village to impose impact fees for the construction of new schools. Plaintiffs do not now contest the village's authority to impose fees to purchase land for school sites.

■ Plaintiffs appeal from an order entering summary judgment. Summary judgment is appropriate when "the pleadings, depositions,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998). The parties agree that there were no contested issues of material fact to be resolved. Therefore, summary judgment was unquestionably appropriate. Plaintiffs' first issue is one of statutory construction, a question of law. *In re Estate of Andernovics*, 197 Ill. 2d 500, 507 (2001). Our review is thus *de novo*. *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 83 (2001).

Development exactions, or impact fees, are one of the most innovative and potentially burdensome mechanisms for funding public facilities made necessary by increased local growth. 3 C. Sands, M. Libonati & J. Martinez, Local Government Law § 16.23.50 (2001); 8 McQuillin on Municipal Corporations § 25.118.50, at 381 (3d rev. ed. 2000) (hereinafter McQuillin). Rapidly growing municipalities have increasingly turned to impact fees in an attempt to bridge the gap between the increased demand for services brought on by rapid growth and the stagnant or shrinking amount of revenue available from traditional sources. See A. Nelson, *Development Impact Fees: The Next Generation*, 26 Urb. Law. 541, 542 (1994); Comment, *School Impact Fees in Colorado: Gone, but Hopefully Not Forgotten*, 70 U. Colo. L. Rev. 257, 288-89 (1999). The fees are intended to finance local improvements necessitated, at least in part, by development. McQuillin, § 25.118.50, at 381. However, the use of such funding devices remains quite controversial. Impact fees are subject to criticisms that, among other things, they ultimately drive up the cost of housing and unfairly burden newcomers to the area with providing public facilities for the entire community. F. Powell, *Challenging Authority for Municipal Subdivision Exactions: The Ultra Vires Attack*, 39 DePaul L. Rev. 635, 636 (1990).

■ Regardless of the desirability of such municipal exactions, it is clear that they may not be imposed without legislative authority. 39 DePaul L. Rev. at 646-47. A non-home-rule municipality such as defendant has only the powers specifically granted by law. Ill. Const. 1970, art. VII, § 7; *Village of Cherry Valley v. Schuelke*, 46 Ill. App. 3d 91, 93 (1977). Thus, municipalities possess only those powers expressly granted, powers incident to those expressly granted, and powers indispensable to accomplish the municipality's purposes. *People ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 524-25 (1999). Absent such authority, a municipal enactment is void. *Geneva Residential Ass'n v. City of Geneva*, 77 Ill. App. 3d 744, 752 (1979).

■ The parties agree that the village's power to pass its impact fee

ordinance is found, if at all, in section 11—12—5 of the Illinois Municipal Code (65 ILCS 5/11—12—5 (West 2000)). That section governs the ability of a municipality to prepare and implement a comprehensive plan for the municipality's future development. Specifically, the plan may be implemented by ordinances "establishing reasonable requirements governing the location, width, course, and surfacing of public streets and highways, alleys, ways for public service facilities, curbs, gutters, sidewalks, street lights, parks, playgrounds, school grounds, size of lots to be used for residential purposes, storm water drainage, water supply and distribution, sanitary sewers, and sewage collection and treatment." 65 ILCS 5/11—12—5(1)(b) (West 2000).

Plaintiffs contend that "school grounds" as used in the statute refers only to land on which a school may be constructed, not school buildings or other infrastructure. Defendant counters that plaintiffs read "grounds" too literally and that the term is broad enough to encompass capital improvements. Defendant also contends that it would be inconsistent with the legislative purpose to allow a municipality to impose fees to acquire land for a school but not to construct a school on it.

In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). The statutory language is usually the best indication of the drafters' intent, and the language should be given its plain, ordinary, and popularly understood meaning. *Collins*, 155 Ill. 2d at 111.

The dictionary defines "ground[s]" as "the area around and belonging to a house or other building." Merriam-Webster's Collegiate Dictionary 513 (10th ed. 2001). This definition supports plaintiffs' reading of the statute as including only the land surrounding a (school) building but not including the building itself. The dictionary also contains the somewhat broader definition, "an area used for a particular purpose" (Merriam-Webster's Collegiate Dictionary 513 (10th ed. 2001)), which might arguably support the village's reading. However, even the latter definition still does not refer explicitly to any appurtenant structures. Thus, the plain meaning of the statute's language supports plaintiffs' interpretation.

Moreover, as plaintiffs point out, the village's reading of "school grounds" as including buildings is inconsistent with the remainder of the statute. Section 11—12—5(1) addresses itself to the municipality's plan commission and is primarily concerned with such traditional planning concepts as the "*location*, width, course, and surfacing of public streets" and the "size of lots to be used for residential purposes." (Emphasis added.) 65 ILCS 5/11—12—5(1)(b) (West 2000).

To read a statute primarily concerned with locating streets and other improvements to also authorize the village to collect revenue to undertake massive capital improvements reads the statutory authority too broadly.

To be sure, the statute can be and has been read to authorize a municipality to require a developer to install or to pay for basic improvements such as sidewalks and curbs, but these items are directly connected with the development itself and are considered necessary appurtenances to any modern development. See *Petterson v. City of Naperville*, 9 Ill. 2d 233, 249-50 (1956). The requirement that a developer provide these basic improvements has long been recognized. M. Cordes, *Legal Limits on Development Exactions: Responding to Nollan and Dolan*, 15 N. Ill. U. L. Rev. 513, 516-17 (1995). A school, on the other hand, may inure to the benefit of others outside the development. See 15 N. Ill. U. L. Rev. at 517.

In *Rosen v. Village of Downers Grove*, 19 Ill. 2d 448 (1960), the supreme court invalidated an ordinance similar to the one in question. The ordinance required as a precondition to receiving plat approval the dedication of land for school purposes. The ordinance further provided " 'that should the Plan Commission deem that the dedication of such land will not of itself meet the reasonable requirements of providing educational facilities for the proposed subdivision, then the Plan Commission may require any additional means for the providing of reasonable facilities as it may deem necessary.' " *Rosen*, 19 Ill. 2d at 452. Pursuant to this provision, the plan commission required a cash payment of $325 per lot for educational facilities, apparently using a figure supplied by the boards of education. *Rosen*, 19 Ill. 2d at 453. In striking down the ordinance, the court explained its decision as follows:

> "But because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all of the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in *Ayres v. The City Council of Los Angeles*, 34 Cal.2d 31, 207 P.2d 1 [1949], which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community.
>
> The record in this case shows that the boards of education arrived at the sum of $325 per lot by taking into account factors totally unrelated to the proposed subdivision, such as the time lag

between the date when homes are occupied and the date when taxes upon the completed homes are collected. Neither the statute nor the ordinance authorized the plan commission to abdicate its authority in favor of the boards of education. And regardless of advantages of flexibility in equalizing financial burdens that might be secured by substituting monetary charges for the dedication of land, or by combining monetary charges with the dedication of land, the plain fact is that the statute does not authorize this technique. In our opinion the circuit court properly enjoined these practices." *Rosen,* 19 Ill. 2d at 453-54.

Defendant responds that it has cured the primary problem identified in *Rosen* by including in its ordinance a formula to ensure that the required impact fees are specifically and uniquely attributable to the development itself. Defendant also contends that a more recent case, *Krughoff v. City of Naperville,* 68 Ill. 2d 352 (1977), impliedly overruled or limited *Rosen.*

*Krughoff,* however, involved a requirement that the developer contribute land, or cash in lieu of land, "for school and park *sites.*" (Emphasis added.) *Krughoff,* 68 Ill. 2d at 354. *Krughoff* held that land dedication requirements specifically and uniquely attributable to the developer's activities were valid (*Krughoff,* 68 Ill. 2d at 358-59), but did not address the question presented here, whether the municipality could also require the contribution of money to construct school buildings and other facilities. The implication of *Krughoff* is that, by carefully limiting the discussion to contributions of land, or cash in lieu of land, to acquire school sites, additional cash contribution requirements would not be valid.

■ In light of the considerations identified above, we hold that defendant, as a non-home-rule municipality, lacked the statutory authorization to impose impact fees for school construction. To the extent that it does so, its ordinance is invalid.

Plaintiffs also contend that defendant lacked the constitutional authority to require the payment of impact fees and defendant does not contend that any of the general powers granted to it by the constitution supports the ordinance in question. Because of our disposition of plaintiffs' first issue, we need not consider their alternative argument that defendant's ordinance violates the equal protection clauses of the state and federal constitutions.

The judgment of the circuit court of Kendall County is reversed.

Reversed.

CALLUM and KAPALA, JJ., concur.