PLOTE, INC., Plaintiff, *v.* MINNESOTA ALDEN COMPANY *et al.*, Defendants-Appellants.—(THE VILLAGE OF SCHAUMBURG, Intevenor-Appellee.)

First District (2nd Division)    No. 80-3091

Opinion filed June 2, 1981.

Marks, Katz, Johnson, Randall, Weinberg & Blatt, of Chicago (William Biederman, of counsel), for appellants.

Jack M. Siegel, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Minnesota Alden, a limited partnership, filed a petition with the circuit court of Cook County to enjoin the disbursement of $19,200 to the Village of Schaumburg. The trial court denied petitioner's motion and, from that order, petitioner has taken this interlocutory appeal pursuant to Supreme Court Rule 307. See Ill. Rev. Stat. 1979, ch. 110A, par. 307.

In 1972, Minnesota Alden sought approval from the Village of Schaumburg (the Village) for construction of a 744-unit apartment complex on land zoned Single Family District (R6). The Planned Unit Development (PUD), which was to include 108 efficiency units, 370 one-bedroom units, and 266 two-bedroom units as well as assorted recreational facilities on its 39-acre parcel, was to be known as Applegate Terrace. The Village passed an ordinance in September 1972, reclassifying the property from R6 to B2 (Business District). The reclassification cleared the way for the Applegate PUD. The Village ordinance provided in relevant part:

"The developer has voluntarily agreed to make a contribution of $100.00 per unit to be constructed under the planned development, to be used to aid in the construction of the Schaumburg Cultural Center. Said contribution shall be payable at the time of the issuance of building permits unless otherwise agreed by the

Village. It is the understanding of the developer and the Village that said contribution is wholly voluntary and, by acceptance of this ordinance, the developer and its successors in title waives [*sic*] any right to rescind its offer of contribution or to bring any action to recover said contribution."

After the enactment of the ordinance, building permits were issued and construction proceeded.

Minnesota Alden soon began to experience financial difficulties. The problems culminated in April 1976, when the trustees of Baird & Warner Real Estate Investment Trust, the construction lender, brought a mortgage foreclosure action against Minnesota Alden. The trial court appointed a receiver on the trustees' motion and, with the receiver's assistance, 192 units of the Applegate PUD were eventually completed. In January of 1980, Minnesota Alden and the trustees of the Bayswater Realty Investment Trust (successor to Baird & Warner) made a negotiated settlement of the foreclosure action. Pursuant to the settlement, Minnesota Alden conveyed the Appelgate PUD to a land trust of which Bayswater was the beneficiary. The settlement contemplated payment of fees to Minnesota Alden's attorneys. In April 1980, the Village demanded $19,200 from Applegate's management agent, Berger Realty, contending that the sum was due under the terms of the ordinance enacted in 1972.

At some point prior to Bayswater's payment of proceeds anticipated under its settlement with Minnesota Alden, Bayswater became aware of both the ordinance and the Village's demand for payment. Bayswater and Minnesota Alden placed the disputed $19,200 in escrow pending resolution of the Village's claim. When the claim was not paid, however, the Village took independent action, advising Berger Realty and Bayswater that it would withhold operating permits and licenses pending payment of the $19,200. In August 1980, the Village refused to renew the operating permit for Applegate. With this stimulus, Bayswater decided to remit to the Village the funds held in escrow and informed Minnesota Alden of its decision.

On August 29, 1980, Minnesota Alden filed a petition with the trial court that retained jurisdiction over the mortgage foreclosure action. Petitioners alleged that the Village made no demand prior to April 1980, for payment under the terms of the ordinance, even though portions of the PUD were occupied as early as summer 1975. The petition also maintained that the Village had not recorded the ordinance and was thus estopped to enforce it. Petitioner asked that the trial court join the Village as a necessary party and enjoin Bayswater's payment to the Village. In September 1980, the trial court ordered Bayswater to deposit the $19,200 in an escrow account with the clerk of the circuit court. In the same order, the Village was given leave to intervene. The order also recited that by the

deposit of the funds, Bayswater was deemed to have fulfilled its obligations as a successor to Minnesota Alden.

The Village answered, as an intervenor, on October 1, 1980. It asserted that a settlement agreement between Minnesota Alden and Bayswater could not affect the Village's rights under the ordinance. The Village denied that it had not made claim for payment prior to April 1980, and maintained instead that it had, at all times, asserted its rights under the ordinance. On November 5, 1980, the trial court denied Minnesota Alden's petition to enjoin the disbursement and ordered the clerk of the circuit court to remit the deposited funds to the village. From that order, Minnesota Alden appeals.

The basic issue presented by appellant is whether a municipality can condition its issuance of a special use permit on a developer's promise to contribute a certain "per unit" sum to a cultural center. The necessity for this court's disposition of that substantive issue, however, is dependent on resolution of a threshold procedural issue. Petitioner herein chose to challenge the validity of the Village ordinance only after a significant portion of Applegate had been completed. Unlike those cases in which a developer sought direct review of a municipality's attempt to impose conditions or dedication exactions prior to approval of a planned development (see, *e.g.*, *Krughoff v. City of Naperville* (1977), 68 Ill. 2d 352, 369 N.E.2d 892), petitioner herein postponed its attack on the Village's ordinance until after petitioner had taken advantage of benefits accruing as a result of the enactment of the ordinance.

In *Zweifel Manufacturing Corp. v. City of Peoria* (1957), 11 Ill. 2d 489, 144 N.E.2d 593, our supreme court considered the issue of waiver in the context of dedication exactions incident to rezoning. The petitioners in *Zweifel* brought an action against the City of Peoria seeking to have the court declare invalid certain conditions imposed on the petitioners by the Peoria Zoning Board in connection with the granting of a variation. Our supreme court held that the petitioners could not complain of the conditions because they had already "accepted the benefits granted to them by the terms of the variations." (11 Ill. 2d 489, 493.) The court noted the petitioners' anomalous position of claiming that, while the portion of the order which granted the variation remained valid, the portion imposing conditions was defective. In refusing to sustain this incongruity, the court commented that, "A party who has accepted and retained the advantages of an order cannot be heard to attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated." (11 Ill. 2d 489, 493.) The court then held that the petitioners' acceptance of the benefit of a variation waived whatever error there might have been in the zoning board's imposition of conditions. 11 Ill. 2d 489, 493-94; *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71

Ill. 2d 510, 524, 377 N.E.2d 21; see generally *Northmoor Estates, Inc. v. Board of Education* (1965), 56 Ill. App. 2d 491, 206 N.E.2d 111 (abstract) (where trial court found developer's agreement to make contribution to school district voluntary, conditional agreement not void as against public policy).

The supreme court reaffirmed the holding in *Zweifel* in *Naper Aero Club v. County of Du Page* (1964), 30 Ill. 2d 447, 197 N.E.2d 1, although finding the *Zweifel* decision inapposite to the *Naper Aero Club* facts. In *Naper Aero Club*, a county zoning board imposed conditions on a developer's operation and maintenance of an air strip adjacent to other developer-owned property. Plaintiff club, comprised of the eventual residents of the development and the owners of the air strip, challenged the limiting conditions imposed by the zoning board on the use of the air strip. Our supreme court noted that, "It can hardly be maintained that the granting of such a permit upon application by a third party [the developer] waived the rights of the plaintiff." (30 Ill. 2d 447, 451.) The supreme court thus distinguished those cases which hold that mere acquiescence in an invalid zoning ordinance does not create an estoppel from the *Zweifel* line of authority which holds that actual receipt of benefits under the variation estops the petitioner from a subsequent attack on conditions imposed in exchange for the grant of a variation. (30 Ill. 2d 447, 450-51.) In contrast to the situation in *Naper Aero Club*, the petitioner in the instant case was not simply a passive recipient of incidental benefits. Rather, as in *Zweifel*, petitioner negotiated the bargain and enhanced its own position by passage of the ordinance.

The court in *Board of Education v. E. A. Herzog Construction Co.* (1961), 29 Ill. App. 2d 138, 172 N.E.2d 645, adhered to the holding in *Zweifel*. The *Herzog Construction* decision rejected a developer's subsequent attack on conditions attendant to an earlier rezoning, holding: "The defendant voluntarily agreed to pay the $95,000.00 toward the construction of the [school] building, as it realized that the proposed school building was essential to its sales program. Having accepted the benefits of the agreement, it is now attempting to renege on its voluntary agreement to contribute money to the school board. It will not be permitted to do so." 29 Ill. App. 2d 138, 142.

A holding of estoppel or waiver, of course, presupposes that the agreement was voluntary and noncoercive. (See *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 455, 167 N.E.2d 230.) In *Rosen*, the trial court found that payments remitted by a developer were made under economic duress. The first payment was made by a check which recited on its face that the payment was tendered under protest. At each step, further protests were lodged. (See 19 Ill. 2d 448, 453.) The actual agreement which the *Rosen* plaintiffs eventually entered into provided

that if the Illinois Supreme Court held the provisions of the village ordinance requiring "per lot" payments in new subdivisions invalid, the moneys were to be returned to the developer. (19 Ill. 2d 448, 451.) Thus, all parties to the agreement were cognizant of its legal vulnerability, and even more importantly, of its contingent nature.

In the instant case, Minnesota Alden's petition to enjoin Bayswater's disbursement of the $19,200 to the Village did not allege any deficiency in the Village ordinance. Rather, the petition stated that the Village had not attempted to claim rights under the ordinance prior to April 1980, and was therefore barred by the settlement of the foreclosure suit between Minnesota Alden and Bayswater. Indeed, petitioner's memorandum of law filed in the trial court conceded that the agreement was made without coercion or duress. No other filing in the record presented to this court indicates that the petitioner ever urged the legal theory that the agreed contributions were coerced in return for the issuance of a special use permit. Since the element of coercion was not advanced by the parties, we do not consider it further. Without the requisite showing of duress, petitioner is estopped from attacking the validity of the conditions in the Village ordinance which require a "per unit" contribution to the Schaumburg Cultural Center.

While we need not reach petitioner's claim that the dedication exaction is invalid, we must note that its validity presents an interesting and decidedly unsettled question. There has been a general movement by our supreme court away from an earlier position holding such conditions invalid. The more recent cases adopt a liberal construction of the right of a municipality to impose conditions in return for a grant of a variation or approval of a plat. Compare *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 496-97, 182 N.E.2d 219 (conditions attached to variations "have not fared well in the courts of other jurisdictions, and have frequently been invalidated either because they introduce an element of contract which has no place in the legislative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning."), and *Pioneer Trust & Savings Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 375, 176 N.E.2d 799 (striking down condition requiring contribution for educational purposes), and *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 100, 334 N.E.2d 810, with *Krughoff v. City of Naperville* (1977), 68 Ill. 2d 352, 358-59, 369 N.E.2d 892 (validating the right of a municipality to require dedication of land, or money in lieu of land, as condition for plat approval).

The earlier cases, typified by *Pioneer Trust & Savings Bank v. Village of Mount Prospect*, tended to adopt a strict, limited construction of the right of a municipality to exact concessions of property or money from a

developer in return for approval of a proposed subdivision or planned unit development. (See, *e.g.*, 22 Ill. 2d 375, 381-82; *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 453, 167 N.E.2d 230.) Our supreme court reasoned that these conditions were merely disguised attempts to take private property without just compensation. (See *Pioneer Trust & Savings Bank v. Village of Mount Prospect*, at 380; see also *People ex rel. Exchange National Bank v. City of Lake Forest* (1968), 40 Ill. 2d 281, 288, 239 N.E.2d 819.) The test developed by the supreme court to distinguish between impermissible and permissible conditions is twofold: the contribution exacted must be "specifically and uniquely attributable" to the developer's activity (*Exchange National Bank v. City of Lake Forest*, at 286), and must be proportioned to the needs created by the development. (See *Board of Education v. Surety Developers, Inc.* (1975), 63 Ill. 2d 193, 201, 347 N.E.2d 149.) Accordingly, although it is manifest that the power to zone lies within the province of the municipality, subject to interference by the courts only where the action of the municipality is unrelated to the public welfare (see *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 493-94, 182 N.E.2d 219), the test in Illinois is more demanding than a cursory search for some connection, however, tenuous, between the municipality's exaction and the public welfare. See *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 100, 334 N.E.2d 810.

It is clear, nonetheless, that the present posture of Illinois law has progressed beyond the earlier cases which invalidated the exactions with words to the effect that "there is no power under the guise of zoning authority to require the payment of a sum of money to a school district as a condition to the zoning." (See *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 117, 324 N.E.2d 406.) Indeed, the substance of this statement in *Duggan* was specifically repudiated in a case decided later that year, *Board of Education v. Surety Developers, Inc.* In *Surety Developers*, the court explicitly stated that the *Duggan* statement, set out above, "cannot be regarded as having precedential value." (63 Ill. 2d 193, 202.) Thus, the Illinois Supreme Court is currently tending toward a more liberal interpretation of the validity of exaction ordinances while maintaining the requirements of proportionality and specific attributability. See also A. Stefaniak, *The Status of Conditional Rezoning in Illinois—An Argument to Sustain a Flexible Zoning Tool*, 63 Ill. B.J. 132 (1974); compare *Ziemer v. County of Peoria* (1975), 33 Ill. App. 3d 612, 617, 338 N.E.2d 145, with *Associated Home Builders v. City of Walnut Creek* (1971), 4 Cal. 3d 633, 640 n.6, 484 P.2d 606, 612 n.6, 94 Cal. Rptr. 630, 636 n.6, *appeal dismissed* (1971), 404 U.S. 878, 30 L. Ed. 2d 159, 92 S. Ct. 202.

In the context of the continuing validity of the attributability and proportionality tests (see *Krughoff*, at 359), the condition imposed in the

ordinance at issue appears suspect. A cultural center is not a recreational facility in the more usual sense of a park or a playground, nor is it an educational necessity, in the manner of a school. Instead, it is an amalgam of educational and recreational functions, without the element of public necessity accorded to either one.

Nevertheless, our finding of estoppel obviates any need for this court to decide the validity of a municipal exaction for a community cultural center. Accordingly, we withhold further comment until the issue is properly before this court. The judgment of the trial court is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.