OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |
|---|---|
| OPINION | : |
| | : No. 90-502 |
| of | : |
| | : AUGUST 21, 1990 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

---

THE HONORABLE RICHARD K. DENHALTER, COUNTY COUNSEL, PLACER COUNTY, has requested an opinion on the following question:

Does a California fire protection district have the authority under Government Code section 66001 to impose a fee upon development projects in the district to pay for construction of facilities or equipment needed for fire protection?

CONCLUSION

A California fire protection district does not have the authority under Government Code section 66001 to impose a fee upon development projects in the district to pay for construction of facilities or equipment needed for fire protection.

ANALYSIS

By Statutes of 1987, chapter 927, to be operative January 1, 1989, the Legislature enacted sections 66000 through 66003 as chapter 5, division 1 of title 7 of the Government Code relating to fees for "development projects."[1] We determine herein whether a California fire protection district may impose fees on "development projects" for construction of facilities or equipment needed for fire protection.[2]

---

[1]All section references are to the Government Code unless otherwise indicated. Sections 66005, 66006, 66007, 66008 and 66009 were prior enactments having different section numbers. In 1988 (Stats. 1988, ch. 418) they were renumbered and made a part of chapter 5, division 1 of title 7 of the Government Code. Sections 66004 and 66006.5 were later enactments.

[2]The question as presented to us assumed that section 66001 of this 1987 enactment provided such authority and asked whether the conflicting provisions of section 13916, subdivision (a) of the Health and Safety Code, a portion of the Fire Protection District Act of 1987, precluded the adoption of development fees.

1.  <u>Government Code, section 66000 et seq.</u>

We first examine sections 66000 et seq. to determine whether they provide authority to California fire protection districts to impose fees upon development projects.

Section 66000 contains definitions of a "development project," "fee," "local agency" and "public facilities" for purposes of that chapter (§§ 66000-66009).[3]  Section 66001 is the main operative provision which will be quoted and examined in detail after this summary of the sections. Section 66002 provides that "[a]ny local agency which levies a fee subject to section 66001 may adopt a capital improvement plan. . . ."  (Emphasis added).  Section 66003 contains certain exemptions to sections 66001 and 66002.  Section 66005 requires generally that exactions of fees reasonably relate to the costs of proposed facilities.  Section 66006 sets forth accounting requirements for fees which are exacted.  Section 66006.5 sets forth certain requirements for fees which are imposed for transportation purposes (enacted 1989).  Section 66007 sets forth the rules concerning the timing of the collection of fees.  Sections 66008 and 66009 provide the procedure and rules for parties to protest the "imposition of any fees, dedications, reservations, or other exactions. . . ."

Section 66001 provides:

"(a) <u>In any action establishing, increasing, or imposing a fee as a condition of approval of a development project</u> by a local agency on or after January 1, 1989, the local agency shall do all of the following:

"(1) Identify the purpose of the fee.

---

We rephrased the question to address the validity of that assumption as well as the effect of section 13961, subdivision (a) of the Health and Safety Code.

[3]Section 66000 provides:

"As used in this chapter:

"(a) `Development project' means any project undertaken for the purpose of development.  `Development project' includes a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate.

"(b) `Fee' means a monetary exaction, other than a tax or special assessment, which is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project, but does not include fees specified in Section 66477, fees for processing applications for governmental regulatory actions or approvals, or fees collected under development agreements adopted pursuant to Article 2.5 (commencing with Section 65864) of Chapter 4.

"(c) `Local agency' means a county, city, whether general law or chartered, city and county, school district, special district, or any other municipal public corporation or district.

"(d) `Public facilities' includes public improvement, public services, and community amenities."

"(2) Identify the use to which the fee is to be put.  If the use is financing public facilities, the facilities shall be identified.  That identification may, but need not, be made by reference to a capital improvement plan as specified in Section 65403 or 66002, may be made in applicable general or specific plan requirements, or may be made in other public documents that identify the public facilities for which the fee is charged.

"(3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed.

"(4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed.

"(b) In any action imposing a fee as a condition of approval of a development project by a local agency on or after January 1, 1989, the local agency shall determine how there is a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed. . . ."  (Emphasis added.)

Section 66001 further requires local agencies to monitor the expenditures of fees it has exacted and make refunds thereof where a need cannot be demonstrated.

We find no language in section 66001 which grants authority to any public agency to impose fees upon a development project.  Instead the language underlined in subdivisions (a) and (b) above assumes the preexistence of authority from sources outside the section both to approve a development project and to impose a fee as a condition to such approval.  The purpose of the section is to make additional procedural requirements when such authority is exercised.

The only language we find which suggests a grant of authority to impose fees is section 66004 which provides:

"The establishment or increase of any fee pursuant to this chapter shall be subject to the requirements of Chapter 13.1 (commencing with section 54994.1) of Part 1 of Division 2 of Title 5."

Chapter 13.1 imposes certain notice requirements concerning the adoption of a new fee or approving an increase in existing fees where there is no other specific statutory notice requirement.

Although section 66004 appears to presuppose that fees may be "established" pursuant to section 66000 et seq. of the Government Code, section 66004 was enacted in 1988 (Stats. 1988, ch. 418.) or one year later than the basic legislation.  And as already noted, the basic 1987 enactment contains no language which affirmatively grants local agencies the authority to establish or impose fees.  Accordingly, we believe section 66004 is to be read in context with the main operative provision, section 66001, and merely constitutes reference to the procedural matters required therein.

We conclude that sections 66000 et seq. do not grant authority to California fire protection districts to impose fees upon development projects.

2. <u>Historical Background and Legislative History</u>

The conclusion that section 66000 et seq. of the Government Code relating to fees for "development projects" was intended to be merely procedural is consistent with the pre-1987 law.

In 1987 there was no question but that cities and counties had the power to require exactions from developers such as the dedication of land or the payment of fees as a condition to the approval of developments. This authority lay in the "police power" ( Cal. Const. art. XI, sec. 7) or in specific legislation such as found in the Subdivision Map Act or statutes governing the adoption of general plans. The legal issue which gave rise to litigation between developers and cities and counties was not the power to require exactions, but the scope or limits of such power. Developers sought to limit the scope by arguing that exactions should only relate directly to the need created by the development and should directly benefit only the development itself. Cities and counties, however, required exactions which were of a much broader nature and which benefited not only the development itself, but also the general welfare of all the inhabitants of the city. (See, e.g., *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31; *Associated Home Builders Etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633; *Grupe* v. *California Coastal Com.* (1985) 166 Cal.App.3d 148, 163-167; *Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 698-699; California Subdivision Map Act Practice (Cont. Ed. Bar. 1987) pp. 84-93.)

Essentially, the case law established the requisite relationship between the development and the governmental exaction, such as a development fee. And as the case law developed, this relationship was only required to be indirect. As explained by the Court of Appeal for the Ninth Circuit in *Parks* v. *Watson* (9th Cir. 1983) 716 F.2d 646, 653:

"`Subdivision exaction' cases are closely analogous to street vacations. A city allows a developer to subdivide land in return for a contribution, typically of land for streets within the subdivision or for a park or school. The developer then challenges the requirement as a taking without just compensation. At one extreme, the older Illinois rule `permits an exaction only if the "need" for the facility being financed is "specifically and uniquely attributable" to the subdivider's development.' Ellickson, Suburban Growth Controls: An Economic and Legal Analysis, 86 Yale L.J. 385, 481-82 (1977); *Pioneer Trust & Savings Bank* v. *Village of Mount Prospect*, 22 Ill.2d 375, 176 N.E.2d 799 802 (1961). But see *Plote, Inc.* v. *Minnesota Alden Co.,* 96 Ill.App.3d 1001, 422 N.E.2d 231, 235-36, 52 Ill.Dec. 550, 554-55 (1981). At the other extreme, California requires only that the exaction have some relationship to the needs of the subdivision or to the increased needs of the city caused by the additional population brought by the subdivision. *Associated Home Builders* v. *City of Walnut Creek*, 4 Cal.3d 633, 640-41, 484 P.2d 606, 611-13, 94 Cal.Rptr. 630, 635-37, appeal dismissed, 404 U.S. 878, 92 S.CT. 202, 30 L.Ed.2d 159 (1971). But there is agreement among the states `that the dedication should have some reasonable relationship to the needs created by the subdivision.' *Call* v. *City of West Jordan*, 606 P.2d 217, 220 (Utah 1979) (footnote omitted)."

Against this background in the case law, it is logical to conclude that the Legislature passed sections 66000 et seq. of the Government Code primarily to establish the requisite "relationship" between a governmental exaction and the private development <u>as a matter of procedure</u>. This is confirmed from an examination of the legislative history of sections 66000 et. seq.

Assuming an ambiguity in sections 66000 et seq. of the Government Code with respect to whether these sections were intended as an affirmative grant of power to local agencies to impose "development fees," legislative materials with respect to the legislation as it moved through the Legislature may be used as an aid to resolve that ambiguity. Additionally the historical circumstances with regard to legislation may also be used as an aid to determining legislative intent. (See *California Mfrs. Assn.* v. *Public Utilities Com* (1979) 24 Cal.3d 836, 844; *American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 486-487; *People* v. *Cherry* (1989) 209 Cal.App.3d 1131, 1135.)

An examination of the staff analysis of the Assembly Legislative Committee on Local Government for A.B. 1600 as amended 4/6/87, and which became Stats. 1987, ch. 927, is instructive on both points. Thus in the staff's "Digest" of the bill it is pointed out that under then current law, Article XI, section 7 of the California Constitution, the police power, grants [some] local agencies the power "to impose fees, exactions or other conditions on development." It additionally points out that additional authority may be found in legislation, "primarily the Subdivision Map Act, the California Environmental Quality Act (CEQA), and the School Facilities Act."

It then states:

"This bill would established a procedure for all cities, counties and districts
to follow when imposing fees as a condition of approval of development as follows:
[the section 61001 procedures are then summarized.]. . . (Emphasis added.)

This same staff analysis then contains a "legislative history" section where it recited that the Legislature had held interim hearings with respect to prior bills which had been introduced as a response "to claims that certain local agencies had abused their authority to impose exactions on developers." It then stated that the decision was made "to introduce legislation [i.e. AB 1600] which retained local agencies' authority to levy fees to finance infrastructure, but which also attached considerable responsibility to that authority." (Emphasis added.)

Finally, the staff analysis contained a summary of existing federal and state case law and then stated:

"AB 1600 would maintain the flexibility which the courts have given local governments relative to approving developments subject to fees or exactions. However, it would require local agencies to show that there is a rational relationship between a fee and the use to which it will be put before the fee is levied, not after the fact when a developer has protested the fee."

Accordingly, based upon this legislative material which contains an outline of the existing constitutional and statutory law and case law, and the historical circumstances for the enactment of AB 1600, it is evident:

1. That A.B. 1600 was intended to supplement existing constitutional and statutory law by providing a procedure whereby,

2. The requisite "relationship" would be required to     be shown in advance between the exaction of a development fee and the development, and thus obviate the need for each matter to be decided on a case by case basis.

3. The Fire Protection District Act of 1987

As noted both in our summary of pre-1987 law and the legislative history to section 66000 et seq., cities and counties are the agencies which approve development projects pursuant to such statutes as the Subdivision Map Act (§ 66410 et seq.), the Planning and Zoning Law (§ 65800 et seq.) and their constitutional power to enact police measures pursuant to article XI, section 7 of the California Constitution. These provisions do not apply to districts such as fire provision districts. Such districts are purely creatures of the Legislature and their powers are found in legislation. (68 Ops.Cal.Atty.Gen. 225 (1985)). As stated recently in *California Bldg. Industry Assn.* v. *Governing Bd.* (1988) 206 Cal.App.3d 212, 234, with respect to another type of special district, that is a school district:

"Development fees are an exercise of the local police power granted to cities and counties by article XI, section 7 of the California Constitution. (*Russ Bldg. Partnership* v. *City and County of San Francisco, supra*, 199 Cal.App.3d at p. 1504; *Trent Meridith, Inc.* v. *City of Oxnard, supra*, 114 Cal.App.3d at p. 325; *Mills* v. *County of Trinity, supra,* 108 Cal.App.3d at p. 662.) While general law cities and counties receive their taxing power from the Legislature under article XIII, section 24, they can impose development fees pursuant to their police power without the necessity of authority from the Legislature. (*Mills*, *supra*, at p. 662.) However, the school districts have no such police power to support the imposition of development fees. Their authority for said fees comes <u>solely</u> from section 53080 <u>and is subject to the section 65995 financial limitations</u>." (Emphasis in original.)

An examination of the Fire Protection District Law of 1987, Health and Safety Code section 13800 et seq., fails to disclose any authority having been granted to such districts to impose "development fees."

In fact, section 13916, subdivision (a) of that act, which specifically authorizes fire protection district to impose fees, in its third sentence specifically precludes the collection of fees from developers for the construction of facilities or the purchase of equipment. It states:

"(a) A district board may charge a fee to cover the cost of any service which the district provides or the cost of enforcing any regulation for which the fee is charged. No fee shall exceed the costs reasonably borne by the district in providing the service or enforcing the regulation for which the fee is charged. <u>A district board shall not charge a fee on new construction or development for the construction of public improvements or facilities or the acquisition of equipment</u>." (Emphasis added.)

Accordingly, under the clear wording of subdivision (a) of section 13916 of the Health and Safety Code, "a district board shall not charge a fee on new construction or development for the construction of public improvements or facilities or the acquisition of equipment."

We therefore conclude that a California fire protection district may not impose a development fee for the construction of public improvements or facilities or the acquisition of equipment either pursuant to section 66000 et seq. of the Government Code, or any other law of which we are aware.[4]

---

[4]See note 2, <u>ante</u>, where we pointed out that the original question presented to us assumed that section 66001 granted local agencies, including districts, affirmative authority to impose fees on "development projects."

\* \* \* \*

---

That assumed interpretation of section 66001 would directly conflict with the exclusion set forth in the third sentence of section 13916, subdivision (a) of the Health and Safety Code.  Courts will usually adopt an interpretation of a statute which is consistent with other statutes over one which raises a conflict.  (See e.g., *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679.)